JAMES W. SMITH v. EDWARD L. POWELL, COMMISSIONER OF MOTOR VEHICLES OF
NORTH CAROLINA

No. 5

(Filed 11 October 1977)

**Automobiles § 122— driving under bridge within right-of-way lines—refusal to take
breathalyzer test**

> A petitioner who drove a motor vehicle only within the limits of the area
> beneath a highway bridge did not drive on a "highway" as that term is used in the
> statute dealing with the breathalyzer test, G.S. 20-16.2; therefore, the Division of
> Motor Vheicles had no authority to revoke the driver's license of petitioner for
> his refusal to take a breathalyzer test after his arrest for driving in such an area
> while under the influence of intoxicating liquor.

APPEAL by petitioner, Smith, from the Court of Appeals which
reversed *James, J.*, who, at the 29 March 1976 Criminal Session of
NEW HANOVER, ordered the respondent to reinstate the petitioner's
driver's license.

The facts are not in dispute. On 2 October 1975, Deputy Sheriff
Willis of New Hanover County went to the area underneath the
bridge by which U.S. Highways 74 and 76 cross the Intercoastal
Waterway to investigate a report of a shooting of a firearm, with
which matter the petitioner Smith had no connection whatever.
Employees of the State mow the grass and, occasionally, pick up
trash beneath the bridge, but the State does not maintain any road-
way, driveway or parking lot beneath the bridge and has never
designated that area as a public vehicular area. From time to time,
members of the public drive their vehicles under the bridge and
launch small boats into the water from this area.

On the occasion in question, Deputy Willis observed the peti-
tioner Smith back Smith's automobile a distance of about four feet
directly under the center of the bridge so that the petitioner's vehi-
cle almost struck the automobile of Deputy Willis. At no time did
Deputy Willis observe the petitioner operate his automobile
anywhere else. The deputy approached the petitioner, observed his
condition, concluded, with reasonable cause, that he was under the
influence of intoxicating liquor, and placed him under arrest for
driving under the influence thereof. He requested the peitioner to
take a breathalyzer test, the request being made in compliance with
all procedural requirements of G.S. 20-16.2. The petitioner refused
to take the test. For that reason, the respondent Commissioner of
Motor Vehicles revoked the petitioner's driver's license for six

months, in reliance upon G.S. 20-16.2. The petitioner requested an administrative hearing, which was granted. Following the hearing, the Division of Motor Vehicles reaffirmed the suspension.

Thereupon, the petitioner filed his petition in the Superior Court of New Hanover County requesting the court to order the respondent to reinstate his driver's license immediately. A hearing was had in the Superior Court before Judge James who found the facts to be as above summarized and concluded that the area beneath the bridge is not a "public vehicular area" as that term is used in G.S. 20-16.2 and that the petitioner was not operating his vehicle upon a "highway" as that term is used in the said statute. For this reason, Judge James concluded that the arresting officer did not have authority under the said statute "to request or require the petitioner to take a breathalyzer examination" and, therefore, the petitioner had the right to refuse to do so. Consequently, he ordered the petitioner's driver's license reinstated immediately.

The Commissioner appealed to the Court of Appeals, which reversed the order of Judge James, the majority holding that the area under the bridge is part of a "highway" as that term is defined in Chapter 20 of the General Statutes. Judge Clark dissented, by reason of which dissent the petitioner appealed to the Supreme Court as a matter of right.

*Rufus L. Edmisten, Attorney General, by William W. Melvin, Deputy Attorney General, and William B. Ray, Assistant Attorney General, for Appellee.*

*Cherry and Wall by James J. Wall for Appellant.*

LAKE, Justice.

G.S. 20-16.2 provides:

"(a) Any person who drives or operates a motor vehicle upon any highway or any public vehicular area shall be deemed to have given consent, subject to the provisions of G.S. 20-139.1, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or operating a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the request of a law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle *on a highway or*

public vehicular area while under the influence of intoxicating liquor.

\*     \*     \*

"(c) \* \* \* [U]pon the receipt of a sworn report of the arresting officer and the person authorized to administer a chemical test that the person arrested, after being advised of his rights as set forth in subsection (a), willfully refused to submit to the test upon the request of the officer, the Department *shall* revoke the driving privilege of the person arrested for a period of six months.

\*     \*     \*

"(h) As used in this section, the term 'public vehicular area' shall mean and include any drive, driveway, road, roadway, street, or alley upon the grounds and premises of any public or private hospital, college, university, school, orphanage, church, or any of the isntitutions maintained and supported by the State of North Carolina, or any of its subdivisions, or upon the grounds and premises of any service station, drive-in theater, supermarket, store, restaurant or office building, or any other business or municipal establishment providing parking space for customers, patrons, or the public." (Emphasis added.)

The petitioner's driver's license was not suspended by the Division of Motor Vehicles upon the theory that his presence under the bridge, in the condition described by the arresting officer, constituted reasonable ground for the officer to believe that the petitioner, prior to reaching the area under the bridge, had driven his vehicle upon a highway in that condition. The theory upon which the Division acted was that driving a motor vehicle entirely within the limits of the area beneath the bridge, while in such condition, justified the arresting officer in requesting the petitioner to take a breathalyzer test and the wilful refusal of the petitioner to take such test required the Division to revoke his driver's license.

We are not here concerned with the authority of the Legislature to make it a criminal offense for any person, while under the influence of intoxicating liquor, to drive a motor vehicle within the limits of such an area, or at other places than upon a highway or a public vehicular area, and to authorize the Division of Motor Vehicles to suspend such person's driver's license upon his wilful refusal to take a breathalyzer test. Upon that question, *see:*

Flanders v. State, 97 Ga. App. 779, 104 S.E. 2d 538 (1958); *State v. Carroll*, 225 Minn. 384, 31 N.W. 2d 44 (1948); *People v. Taylor*, 202 Misc. 265, 111 N.Y.S. 2d 703 (1952).

The above quoted statute authorizes the suspension of a person's driver's license for refusal to take a breathalyzer test only if such person was requested to take the test by an officer who arrested him or her with reasonable grounds to believe he or she, while under the influence of intoxicating liquor, drove or operated a votor vehicle on a highway or a public vehicular area. Thus, the issue for determination upon this appeal is whether one who drives a motor vehicle only within the limits of the area beneath a highway bridge is driving "on a highway or public vehicular area" as those terms are used in this statute.

Obviously, the above quoted definition of "public vehicular area" set forth in Paragraph (h) of G.S. 20-16.2 does not include the area under this bridge, for the area in question is not "upon the grounds and premises" of an institution or establishment of a type specified in that definition. Thus, the question for decision narrows to: When a person drives a motor vehicle only upon the ground beneath a highway bridge, is he driving "on a highway?" We hold he is not.

G.S. 20-4.01 provides:

"Unless the context otherwise requires, the following words and phrases, *for the purpose of this Chapter*, shall have the following meanings: (Emphasis added.)

\*    \*    \*

"(13) Highway or Street. — The entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic. \* \* \*"

While the record shows people, with some frequency, drive motor vehicles beneath the bridge here in question, nothing in the record indicates that they have a right to drive upon any part of this area.

It is elementary that when a statute contains a definition of a word or term used therein, such definition, unless the context clearly requires otherwise, is to be read into the statute wherever such word or term appears therein. *See: Yacht Co. v. High*, 265 N.C. 653,

144 S.E. 2d 821 (1965); *Trust co. v. Wolfe*, 243 N.C. 469, 91 S.E. 2d 246 (1956); 73 Am. Jur. 2d, Statutes, § 225. Thus, the determination of the issue presented by this appeal requires the construction of this definition of "highway."

The term "highway" and the synonymous term "street" appear many times, and in varying types of provisions, in Chapter 20 of the General Statutes, the Motor Vehicle Law. Clearly, the Legislature has provided that, unless the context requires otherwise, the word "highway" is to be given the same connotation in all of these provisions, whether they be penal, remedial, or otherwise. Thus, the well known principles of statutory construction that a penal statute is to be strictly construed (*State v. Pinyatello*, 272 N.C. 312, 158 S.E. 2d 596 (1968)) and a statute designed to promote safety is to be liberally construed (*State v. Lipkin*, 169 N.C. 265, 84 S.E. 340 (1915)) have no application to this matter. The definition of "highway" in G.S. 20-4.01(13) is, therefore, to be construed so as to give its terms their plain and ordinary meaning. *State v. Wiggins*, 272 N.C. 147, 158 S.E. 2d 37 (1967); *Yacht Co. v. High, supra*; *Cab Co. v. Charlotte*, 234 N.C. 572, 68 S.E. 2d 433 (1951).

In 39 Am. Jur. 2d, Highways, Streets and Bridges, § 1, it is said:

"In some instances, and for particular purposes, the term 'highway' has been defined to encompass the entire right of way, including the shoulder and other places open to travel, but in other instances and for other purposes, the term has been defined narrowly so as to exclude the exterior boundaries of the right of way and confine its meaning to that part of a public road open to the use of the public for the purpose of vehicular travel."

*See also*: 39A C.J.S., Highways, § 1(1)b.

In Paragraph (38), G.S. 20-4.01 also defines the term "Roadway." That definition is as follows:

"That portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the shoulder. * * *"

These two definitions, considered together, show that the Legislature in defining "highway" intended to put at rest the question noted in the above quotation from American Jurisprudence and to make it clear that the entire "width" between the right-of-way lines is included in a "highway" as distinguished from a "roadway."

It is, of course, true that a "highway" or a "street" is not limited to its surface so far as the right of the State to use, maintain and protect it from damage and private use are concerned. In this sense, it includes not only the entire thickness of the pavement and the prepared base upon which it rests but also "so much of the depth as may not unfairly be used as streets are used" for the laying therein of drainage systems and conduits for sewer, water and other services. Elliott, Roads and Streets, § 20 (1926); 39 Am. Jur. 2d, Highways, Streets and Bridges, § 258. Nevertheless, the primary concern of the Legislature in defining "highway" as used in Chapter 20 of the General Statutes was with the "width," not the depth. "Width" means "the lineal extent of a thing from side to side." Century Dictionary; Webster's New International Dictionary.

In ordinary speech, the expression "driving or operating a motor vehicle *on* a highway" connotes driving on the top surface of the highway, not the ground beneath a bridge over which the "roadway" portion of the highway runs. In ordinary speech, one thing is said to move or rest "on" another when it moves or rests upon the top surface of the second thing, as when a book is said to lie *on* a table as compared with lying *in* the table drawer.

The contention of the Division of Motor Vehicles that G.S. 20-16.2, dealing with the breathalyzer test, applies to any operation of a motor vehicle, at whatever depth or level beneath the surface, so long as it is within the right-of-way lines is an ingenious argument, born of a commendable desire to promote safety of persons and property, but in our opinion the Legislature did not have areas beneath bridges in mind when it enacted this statute. If the dry land under a bridge is part of the "highway" which crosses a stream upon the bridge, then so is the water under the bridge and the bed of the stream or pond so crossed. It would be carrying legal logic a bit far to say that one fishing from a boat anchored beneath this bridge over the Intercoastal Waterway is fishing "on a highway."

The record indicates that there is a considerable stretch of level land under this bridge, to which people have relatively easy access by motor vehicle and which they use for launching boats and related activities. Obviously, it would be dangerous to drive a motor vehicle in this area while the driver is under the influence of intoxicating liquor. The Legislature, if it sees fit to do so, may deal with this danger by appropriate legislation. We simply hold that it has not undertaken to do so by providing for the giving of a breathalyzer test to one who, under the influence of intoxicating liquor, drives a motor vehicle "on a highway."

The decision of the Court of Appeals is, therefore, reversed and the matter is remanded to that court for the entry of a judgment affirming the judgment of the Superior Court.

Reversed and remanded.