549 So.2d 1086 (1989)
HANCOCK ADVERTISING, INC., Appellant,
v.
DEPARTMENT OF TRANSPORTATION, Appellee.
No. 88-480.
District Court of Appeal of Florida, Third District.
September 26, 1989.
*1087 Papy, Weissenborn & Papy and James McMaster, Miami, for appellant.
Gregory G. Costas and Thomas H. Bateman, III, Orlando, for appellee.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
SCHWARTZ, Chief Judge.
Hancock Advertising, Inc. appeals from a final order of the Department of Transportation (DOT) requiring the removal of an outdoor advertising sign Hancock had erected near the intersection of Interstate 95 (I-95) and State Road 836 (Dolphin Expressway) in the City of Miami. Since the DOT has authority over the sign only if it is located "on" I-95 within the meaning of section 479.07(1),[1] Florida Statutes (1987), see § 479.07(9)(a)1.,[2] the dispositive issue is whether that is in fact the case. Contrary to the DOT's position, we hold that it is "on" the expressway rather than the interstate and therefore reverse the decision below.
The sign in dispute is the easterly section of a two part billboard which lies slightly to the west of and parallel to I-95 and to the north and perpendicular to State Road 836. We are concerned with the easterly-facing half of the sign, that is, the one which motorists traveling west on 836 face head on. While it is visible from I-95, those going either north or south would have to turn their heads to view the message. The following diagram, oversimplified but sufficient for the purpose, illustrates the situation:

After a complicated process in which a representative of the DOT initially indicated that no permit was required, Hancock erected the sign in reliance on that representation, and a hearing examiner subsequently determined that the sign was unauthorized, the secretary of the DOT held in the order on review that:
[B]ecause the subject sign is immediately adjacent to Interstate 95, visible from the main-traveled way of Interstate 95 and erected without a permit, the subject *1088 sign should be removed pursuant to Section 479.105(1), Fla. Stat. (1985).
We do not agree.
Contrary to the DOT's apparent conclusion that the issue turns on whether the billboard is "adjacent to" or "visible from" I-95,[3] the statutory authority to regulate the sign, since it is inside the limits of the City of Miami, depends entirely on whether it is "on" I-95 as opposed, it follows, to being on SR-836. § 479.07(1), Fla. Stat. (1987). Since there is no statutory definition of the word "on," we must exercise our judicial responsibility to resolve the issue ourselves. L.B. Price Mercantile Co. v. Gay, 44 So.2d 87, 90 (Fla. 1950). In doing so by holding that the sign is not on I-95, we primarily apply one of the most basic rules of statutory construction, which is peculiarly applicable here: that a legislative word, including a deceptively simple one like "on," must be given its ordinary and commonly accepted meaning, 49 Fla. Jur.2d Statutes § 123 (1984), as it is used in the particular statutory context.[4] See 49 Fla.Jur.2d Statutes § 123; 73 Am.Jur.2d Statutes § 213 (1974).
In the present setting of a street location, it seems clear that when one speaks in ordinary usage of a structure being "on" a particular street, he means the roadway to which it fronts; that is, the one which has direct physical access to the structure in question. He does not mean a merely intersecting street or boulevard even if the building runs parallel to that roadway a short distance away and is peripherally visible to those upon it. Thus, if the issue were whether the building indicated on the *1089 following map is "on," in the sense of having an address "on," 1st St. or 3rd Ave., no one would question that the structure is "on" the street.

See The American Heritage Dictionary (2d College ed. 1982) ("on ... 1. Used to indicate: ... c. Location at or along: a house on the beach. d. Proximity: a town on the border"). The present issue requires the same conclusion.
Our view is supported by the practical construction which has in fact been adopted by the industry which we are entitled to consider in our resolution of the statutory interpretation problem before us. 49 Fla.Jur.2d Statutes § 116; see Calio v. Equitable Life Assurance Soc'y, 169 So.2d 502 (Fla. 3d DCA 1964). The record shows that, consistent with the common practice in the business, the particular sign involved here was treated indeed as being located "on" State Road 836, and not Interstate 95. Specifically, the traffic count and the charges made for advertising on the billboard were computed according to the number of vehicles directly facing the sign driving on State Road 836, without regard to those who could see the sign only out of the corner of their eyes while traveling on Interstate 95. There is no reason why our view of § 479.07(1) should differ from those in the day-to-day business of dealing with its subject matter.
In sum, we hold that no matter what its proximity to or visibility from the Interstate, the advertising sign in question can be said only to be "on" State Road 836, and not "on" I-95.
The final order under review is therefore
Reversed.
NESBITT, J., concurs.
BASKIN, Judge (dissenting).
Hancock Advertising, Inc., [Hancock] appeals a final order issued by the Department of Transportation [DOT] requiring the removal of Hancock's outdoor advertising sign. I would hold: 1) the sign is on the interstate highway and requires a permit, § 479.07(9)(a)1, Fla. Stat. (1987), and 2) DOT's failure to measure the distance between signs in the prescribed manner prevents it from finding that Hancock's sign was less than 1500 feet from another sign. I would reverse the order for removal and remand for the following reasons:
In 1985, Hancock applied for a permit for a v-shaped, two-sided, outdoor advertising sign to be located at the intersection of Interstate 95 [I-95] and State Road 836. The district supervisor rejected the application. He informed Hancock that he was not certain whether the sign would be visible to users of the main-traveled way of I-95 and that if it were visible only to drivers on State Road 836, a permit would not be required. In 1987, Hancock erected the easterly sign facing I-95 without obtaining a permit. DOT issued a notice of violation alleging that the sign did not have the requisite permit and did not comply with statutory spacing requirements. See §§ 479.07(1), 479.07(9)(a)(1), Fla. Stat. (1987). At the conclusion of an administrative hearing, the hearing officer, entered Findings of Fact in the Recommended Order:
FINDINGS OF FACT
1. Hancock Advertising Agency owns a sign which is located immediately adjacent to Interstate-95 in the City of Miami *1090 at the point where State Road 836 and Interstate-95 meet. The structure and its advertising message is an outdoor advertising sign as defined in Chapter 479, Florida Statutes. The sign is visible from the main traveled way of Interstate-95.[1]
2. Interstate-95 is part of the interstate highway system as defined in Section 479.01(7), Florida Statutes.
3. No State outdoor advertising permit has been issued for the sign face which is the subject of this litigation.
4. The Hancock Advertising sign is only about 443 feet from the nearest legally permitted sign.
5. Hancock Advertising received proper notice from the Department of Transportation of the outdoor advertising violations by mail and by posting a notice of violation on the sign.
The secretary for DOT incorporated these findings in the Final Order. The secretary also found that "the evidence clearly shows that the structure is located 10-12 feet from the right of way of I-95... . [B]ecause the subject sign is immediately adjacent to Interstate 95, visible from the main-traveled way of Interstate 95 and erected without a permit, the subject sign should be removed... ."
Hancock argues that DOT did not prove that the sign was "on an interstate highway," § 479.07(9)(a); that the undefined phrase "on an interstate highway" renders that section unconstitutionally vague and ambiguous; and that the inspector did not properly measure the distance between Hancock's sign and the nearest legal sign. DOT contends that it proved that the sign is on the interstate highway; that the sign was erected without a permit; and that the sign is not at least 1500 feet from the nearest legal sign on the same side of the highway.
At the outset, I note that "agency determinations with regard to a statute's interpretation will receive great deference in the absence of clear error or conflict with legislative intent." McDonald's Corp. v. Department of Transp., 535 So.2d 323, 325 (Fla. 2d DCA 1988) (quoting Tri-State Systems, Inc. v. Department of Transp., 491 So.2d 1192, 1193 (Fla. 1st DCA 1986)); § 120.68(9), Fla. Stat. (1987); see Gay v. Canada Dry Bottling Co., 59 So.2d 788 (Fla. 1952); Cohen v. School Bd. of Dade County, 450 So.2d 1238 (Fla. 3d DCA 1984), and "this court may not substitute its judgment for that of the agency as to disputed findings of fact or as to the weight of the evidence. Agency determinations may be set aside only if the court finds that the agency's action depends on a finding of fact not supported by competent evidence in the record." Gershanik v. Department of Professional Regulation, Bd. of Medical Examiners, 458 So.2d 302 (Fla. 3d DCA 1984), review denied, 462 So.2d 1106 (Fla. 1985); § 120.68(10), Fla. Stat. (1987).
Chapter 479, Florida Statutes (1987), provides for the regulation of outdoor advertising signs adjacent to designated highways in Florida. § 479.02(2), Fla. Stat. (1987); see Fla. Admin. Code, Rule 14-10.001(1), 14-10.009; see also T & L Management, Inc. v. Department of Transp., 497 So.2d 685, 686 (Fla. 1st DCA 1986); Hammond v. Department of Transp., 493 So.2d 33 (Fla. 1st DCA 1986); Florida Dept. of Transp. v. E.T. Legg & Co., 472 So.2d 1336 (Fla. 4th DCA 1985). Further, section 479.07(1), Florida Statutes (1987), provides that "a person may not erect, operate, use or maintain ... any sign ... on any portion of the interstate highway system without first obtaining a permit for the *1091 sign... ." Section 479.07(9)(a)(1), Fla. Stat. (1987), states:
A permit shall not be granted for any sign for which a permit had not been granted by the effective date of this act unless such sign is located at least:
1. One thousand five hundred feet from any other permitted sign on the same side of the highway, if on an interstate highway.
Applying principles of statutory construction, I consider the meaning of the phrase "on an interstate highway" as expressed in the applicable statutes. Although section 479.01(6) defines "highway" as "any road, street or other way open or intended to be opened to the public for travel by motor vehicles," the statute does not define "on." When the statute does not define words of common usage, such words are to be construed in accordance with their plain and ordinary meaning. Lage v. Pan Am. Bank, 529 So.2d 1242 (Fla. 3d DCA 1988). As the majority opinion recognizes, when describing property, the term "on" may signify a "location closely adjoining something or location very near some point of a narrowly extended area (as a street)." Webster's Third New International Dictionary 1574 (1986). The American Heritage Dictionary (2d College ed. 1982) states: "on ... 1. Used to indicate: ... c. Location at or along: a house on the beach. d. Proximity: a town on the border... ." See example T & L Management, Inc., 497 So.2d at 686 ("Applications for the permitting of outdoor advertising along interstate highways in Florida are regulated by Chapter 479, Florida Statutes and Florida Administrative Code Rule 14-10.09."); Fla. Admin. Code Rule 14.001 ("This part of Rule Chapter 14-10 defines the methods used by the Department to control outdoor advertising signs along any portion of the Interstate ... Highway System... .) (emphasis supplied). The evidence adduced at the hearing demonstrates that the sign meets this definition.[2] The department supervisor *1092 testified that based on the right-of-way maps and his field inspection the sign was 10-12 feet from Interstate 95 right-of-way. Charles Hancock, vice-president of appellee Hancock Advertising Inc., stated that the sign is not adjacent to I-95; that it is visible on State Road 836; and that Hancock intended the sign to be read by travelers on State Road 836. In addition, the sign  within 660 feet of the nearest edge of the right of way of the interstate highway system  is on a DOT-controlled portion of the interstate highway system, as set forth in section 479.11(1).[3]See Atlantic Outdoor Advertising v. Department of Transp., 518 So.2d 384, 386 (Fla. 1st DCA 1987), review denied, 525 So.2d 876 (Fla. 1988). DOT's findings of fact are supported by substantial competent, albeit disputed, evidence.
Hancock asserts that it intended to direct the sign toward State Road 836 and did not intend it to be read from I-95. Hancock's intentions are irrelevant to the evaluation of DOT's regulatory jurisdiction. The purpose for which the sign is erected is a statutory consideration only if the sign is beyond 660 feet of the nearest edge of the right-of-way of any portion of the interstate highway system. § 479.11(2), Fla. Stat. (1987). Here, the evidence indicates that the sign was within 660 feet of the right-of-way of the interstate highway. Thus, the direction from which the sign is *1093 intended to be read is not pertinent. See § 479.11(1), Fla. Stat. (1987). Accordingly, I would hold that DOT's interpretation of section 479.07(9)(a)(1) and its application of the law to the facts are not clearly erroneous or in conflict with the legislative intent.
Although I agree with the agency that the sign is "on the interstate highway," requires a permit, § 479.07(1), and must comply with the applicable spacing requirements, § 479.07(9)(a)(1), I would not affirm the order. DOT may not grant a permit for the sign unless the sign is located at least 1500 feet from a permitted sign on the same side of the highway. § 479.07(9)(a)(1), Fla. Stat. (1987). The order of removal is premised on the theory that the sign was erected without a permit and did not conform to spacing standards.[4] I would reverse the order because the evidence as to violation of the spacing requirements is insufficient. Hancock correctly contends that the Department inspector did not measure the distance between the nearest permitted sign and Hancock's sign in accordance with Florida Administrative Code Rule 14-10.006(1)(b)(8). That rule provides that "[t]he minimum distance between structures shall be measured along the nearest edge of the pavement between points directly opposite that part of the sign nearest the pavement." The violation checklist requires that "[a]ll requested sizes and distances must be measured with a 100 foot tape (not estimated). If distance is more than 1500 feet an odometer measurement will be permissible."
The inspector testified that he drove a truck, equipped with a "calibrated machine," from a point on the main-traveled way of I-95 where the pole of the permitted sign was parallel to his position on I-95 to the point where his truck was aligned with the closest point of Hancock's sign. According to that method of measurement, the signs are 443 feet apart; however, the inspector's testimony reveals that he did not follow the correct procedure. He did not measure from the nearest pavement  the exit ramp onto State Road 836 or use a 100-foot tape as required by the violation checklist. See Atlantic Outdoor Advertising, 518 So.2d at 384. Because the agency did not prove that the sign violated the spacing requirements, no reason for denying a permit exists at the present time.
For these reasons, I would reverse the order of removal and remand the cause for a determination of the distance between the signs in accordance with the applicable rules.
NOTES
[1] 479.07 Sign permits. 

(1) Except as provided in s. 479.16, a person may not erect, operate use, or maintain, or cause to be erected, operated, used, or maintained, any sign on the State Highway System outside an incorporated area or on any portion of the interstate or federal-aid primary highway system without first obtaining a permit for the sign from the department and paying the annual fee as provided in this section. [e.s.]
[2] A permit shall not be granted for any sign for which a permit had not been granted by the effective date of this act unless such sign is located at least:
1. One thousand five hundred feet from any other permitted sign on the same side of the highway, if on an interstate highway.
[3] Among other reasons, this clear and unjustified deviation from the terms of the statute renders inapplicable the rule that a contemporaneous administrative statutory construction is entitled to substantial judicial deference. See Green v. Wisner, 119 So.2d 814, 815 (Fla. 2d DCA 1960) ("Administrative custom cannot prevail, where, in a particular case, it is found to be in clear conflict with the law judicially construed in relation to established facts."); see also Daniel v. Florida State Turnpike Auth., 213 So.2d 585, 587 (Fla. 1968); Green v. Hood, 120 So.2d 223, 226 (Fla. 2d DCA 1960).

Furthermore, since the DOT's decision below results in, we think, an unauthorized arrogation of power to itself, the issue is governed by the contrary rule that:
We are always reluctant to disagree with an administrative body in its interpretation of the statute which it has the duty to administer; and, of course, the orders of the Florida Commission come to this court with a presumption of regularity, Sec. 364.20, Fla. Stat., F.S.A. But we cannot apply such presumption to support the exercise of jurisdiction where none has been granted by the Legislature. If there is a reasonable doubt as to the lawful existence of a particular power that is being exercised, the further exercise of the power should be arrested. Edgerton v. International Company, Fla. 1956, 89 So.2d 488. See also State v. Western Union Telegraph Co., 1928, 96 Fla. 392, 118 So. 478. [e.s.]
Radio Tel. Communications, Inc. v. Southeastern Tel. Co., 170 So.2d 577, 582 (Fla. 1965).
Finally, it is our ultimate determination that the DOT's finding that its statutory authorization applies to this billboard is "clearly erroneous" and thus, under any formulation of the doctrine, may not be followed. See Daniel v. Florida State Turnpike Auth., 213 So.2d at 587; State v. Florida Dev. Comm'n, 211 So.2d 8, 12 (Fla. 1968); 49 Fla.Jur.2d Statutes § 163, at 196 n. 25 (1984).
[4] In the case of a word like "on," resort to dictionary definitions, which may be appropriate or even determinative in other areas, see Florida Dep't of Revenue v. DeMaria, 338 So.2d 838, 840 (Fla. 1976), is, to say the least, not very helpful here. The Oxford English Dictionary (1933) gives no fewer than forty-three definitions of the word. Its most common use seems to be the one in the sense of "the book is on the table." Obviously, however, the billboard need not be located "on" I-95 in this respect to come within section 479.07(1), Florida Statutes (1987). Similarly, the only previous Florida judicial construction of "on," in Jerome H. Sheip Co. v. Amos, 100 Fla. 863, 874-876, 130 So. 699, 704 (1930), concerned the phrase "tax on petroleum products" which was held to mean "with respect or pertaining to." Again, the irrelevance of this holding to our question serves to emphasize the significance of the particular milieu in which the legislature employs a given word or expression. Compare Smith v. Powell, 293 N.C. 342, 238 S.E.2d 137 (1977) (driver who operated car on land beneath bridge was not driving "on highway" under statute providing for breathalyzer test); State v. Jarvis, 145 Vt. 8, 482 A.2d 65 (1984) (defendant who drove into parking lot along public highway was operating a motor vehicle "on a highway" under statute prohibiting driving while intoxicated); Chatham v. Brainerd, 11 Conn. 60 (1835) (description of land as bounded "easterly on highway" gives title to center of highway), as cited in Annot., Boundary  Title to Center of Highway, 2 A.L.R. 6, at 27 (1919).
[1] The structure, along an interstate highway, is within the jurisdiction of DOT when it meets the statutory definition of "sign." The term "sign" is defined as any structure whose message is intended to advertise, and any part of which is visible from any place on the main-traveled way. § 479.01(14), Fla. Stat. (1987). A "visible sign" means that the message, whether or not legible, can be seen without visual aid by a person of normal visual acuity. § 479.01(23), Fla. Stat. (1987). For example, the structure does not require a permit for the westerly face of Hancock's sign. The westerly face is not visible from the main-traveled way of Interstate 95; it faces State Road 836, a federal aid urban highway and thus is not within the DOT's jurisdiction.
[2] I disagree with the majority's proposition that our view of section 479.07(9)(a)(1) should follow the construction adopted by the industry. First, I agree that our view should not differ from those in the day-to-day business of dealing with the subject matter; however, those in the business  Hancock and DOT  do not agree with each other.

Second, the majority's reliance on Calio v. Equitable Life Assurance Soc'y, 169 So.2d 502 (Fla. 3d DCA 1964), is misplaced. In that case, private parties entered a contract which included a definition of a statutory term. In holding that parties to an insurance contract could define a term, the court stated: "[w]here there is a complete absence of legislative expression as to the meaning of statutory terms, individuals involved therewith should be permitted to reasonably provide definitions therefor.... The definitions provided may not be such as to violate or obstruct or restrict the spirit, meaning and clear intention of the legislature." Calio, 169 So.2d at 504. Calio involved private individuals who agreed to a definition of a statutory term. Here, Hancock and the DOT are not contracting parties; moreover, they did not agree to the definition of the term "on." The intent of the legislature in enacting this chapter is to regulate signs adjacent to regulated highways. § 479.02(2), Fla. Stat. (1987). Application of industry criteria circumvents the chapter's express purpose. The statute specifically addresses circumstances where the agency must consider the sign company's criteria in determining the sign location. Section 479.11(2) provides that "No sign shall be erected ... beyond 660 feet of the nearest edge of the right-of-way of any portion of an interstate highway system ... which sign is erected for the purpose of its message being read from the main-traveled way" of the controlled highway. (Emphasis supplied.) However, section 479.11(1) which prohibits signs such as the subject sign within 660 feet of the right-of-way of a controlled highway, does not include the underlined provision. Thus, the use of industry criteria to determine the sign location  that is, according to the number of vehicles directly facing the sign without regard to those who could see the sign "only out of the corner of their eye while traveling on Interstate 95", at 1089,  directly contradicts the intention of the legislature to consider the road from which the sign is intended to be read only under the circumstances set forth in section 479.11(2). In addition, the statute does not differentiate between travelers who directly face the sign and those who could see the sign only by turning their heads. In defining the term "sign," § 479.01(14) clearly states that the structure must be "visible from any place on the main-traveled way." To limit the statute's application to those directly facing the sign is contrary to its express language. Thus, the application of industry construction thwarts the spirit and intent of the statute.
Finally, I recognize that application of industry views may be pertinent at some point in the rule-making or legislative process, but not here. See Department of Health & Rehabilitative Servs. v. Framat Realty, Inc., 407 So.2d 238, 242 (Fla. 1st DCA 1981) ("Permissible interpretations of a statute must and will be sustained, though other interpretations may seem preferable according to some views. If the rule binds too tightly to suit them the appellee developers have their proper remedy in the representative and politically responsive branches, the legislative or executive, but not in the judiciary, nor in Section 120.56 rule challenge proceedings before a hearing officer.").
[3] I disagree with the majority's assertion that the sign is on State Road 836. The DOT supervisor testified that the exit ramp is part of Interstate 95 and that "[State Road] 836 proper started approximately a block from [the sign] or the right-of-way shows I-95 right-of-way actually going west of where the sign is." DOT furnished the following diagram as evidence. Although it is not drawn to scale, it is helpful in understanding the agency's ruling. The diagram labels the sign in question as "face subject of violation east face."

[4] In the recommended order, the hearing officer found that the sign face could not be permitted because it violated section 479.07(9)(a)(1). See Beal v. State, Dept. of Transp., 402 So.2d 1347, 1348, n. 1, (Fla. 4th DCA 1981).