STATE OF NORTH CAROLINA v. WADDELL JOHNSON HOPPER, JR., Defendant

No. COA09-1211

(Filed 6 July 2010)

**Search and Seizure— investigatory stop—reasonable suspicion of traffic violation—motion to suppress—properly denied**

The trial court in a possession of controlled substances case did not err in denying defendant's motion to suppress evidence seized from his vehicle during a traffic stop. The police officer that stopped defendant had reasonable suspicion to believe that defendant committed a traffic violation by failing to have his taillights on while driving on a public street with his windshield wipers operating, thus supporting the traffic stop.

Appeal by defendant from judgment entered 7 May 2009 by Judge William Z. Wood, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 24 February 2010.

*Attorney General Roy Cooper, by Assistant Attorney General J. Joy Strickland, for the State.*

*S. Hannah Demeritt for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Waddell Johnson Hopper, Jr. appeals from the trial court's order denying his motion to suppress evidence seized during a traffic stop. Defendant contends that the police officer that stopped him lacked reasonable suspicion to conduct the stop, and thus the evidence seized was the product of an unconstitutional search and should have been suppressed. We conclude, however, that the officer had reasonable suspicion to believe that defendant committed a traffic violation supporting the traffic stop. We, therefore, affirm.

Facts

On 28 April 2008, Officer T.S. Mabe of the Winston-Salem Police Department was on routine patrol in Piedmont Circle, an apartment complex in Winston-Salem, North Carolina. Piedmont Circle, also the name of a street in the complex, "goes around some inner apartments, and then there's some outer apartments on the other side of the circle[.]" Corporal Mabe was contacted by investigators in the police

department's narcotics unit and was told that defendant, who was driving in front of him in a white Chevrolet SUV, was driving with a revoked license.

At the time of the call from the narcotics officers, it was "raining excessively heavy" and Corporal Mabe needed his windshield wipers on their highest setting to see out of his front windshield. Corporal Mabe saw defendant's white SUV in front of him and noticed that defendant did not have his taillights on despite the heavy rain. Corporal Mabe activated his blue lights and siren and stopped defendant's car. The narcotics officers arrived at the scene and defendant was cited for failing to have his vehicle's taillights in proper working order. During the traffic stop, defendant's vehicle was searched and the police found approximately 10 grams of marijuana, drug paraphernalia, and a 9mm handgun. Defendant was arrested and charged with possession of marijuana with the intent to sell or deliver, possession of drug paraphernalia, carrying a concealed weapon, and possession of a firearm by a felon.

Defendant filed a pre-trial motion to suppress the evidence seized pursuant to the traffic stop on the ground that Corporal Mabe did not have reasonable suspicion to stop defendant's vehicle. After conducting a hearing on 4 May 2009, the trial court entered an order on 7 May 2009, in which it concluded that Corporal Mabe had reasonable suspicion to conduct the traffic stop based on defendant's failure to have his taillights on while driving with his windshield wipers operating. Consequently, the trial court denied defendant's motion to suppress and defendant pled guilty to all charges, expressly reserving his right to appeal from the denial of his motion to suppress. The court consolidated the offenses into one judgment and sentenced defendant to a presumptive-range term of 16 to 20 months imprisonment. Defendant timely appealed to this Court.

## Discussion

Defendant's only argument on appeal is that the trial court erred in denying his motion to suppress. In reviewing the denial of a motion to suppress, the appellate court determines whether the trial court's findings of fact are supported by competent evidence and whether those findings, in turn, support the court's conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). The court's findings of fact are binding on appeal if they are supported by competent evidence, even if the evidence is conflicting. *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). The trial

court's conclusions of law, however, "are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Traffic stops are permitted under the Fourth Amendment if the officer has " 'reasonable suspicion' to believe that a traffic law has been broken." *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008) (quoting *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006)). Reasonable suspicion requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by [the officer's] experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968)).

Reasonable suspicion is a less demanding standard than probable cause, *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645, *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008), and only requires a "minimal level of objective justification, something more than an 'unparticularized suspicion or hunch[,]' " *State v. Steen*, 352 N.C. 227, 239, 536 S.E.2d 1, 8 (2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion" exists. *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).

With respect to whether Corporal Mabe had reasonable suspicion to conduct a traffic stop of defendant's SUV on 28 April 2008, the trial court found:

4) It was raining hard and Corporal Mabe had to put his windshield wipers on the highest setting so that he could see out the front windshield of his patrol car.

5) When Corporal Mabe pulled behind the defendant's white SUV on the road known as Piedmont Circle, he observed that the defendant's vehicle did not have its taillights on as required by G.S. 20-129 at a time when Officer Mabe believed that the defendant's windshield wipers were operating.

6) Corporal Mabe believed Piedmont Circle was a public road.

7) Corporal Mabe issued the defendant a citation for failing to have taillights in proper working order pursuant to G.S. 20-129.

Based on its findings, the trial court concluded that "Piedmont Circle is a public road or highway within the meaning of G.S. 20-129"; that "Corporal Mabe reasonably believed that the defendant was required to have his taillights operating under the given weather conditions"; and that "Corporal Mabe had reasonable articulable suspicion to stop the defendant's vehicle for failing to have taillights in proper working order." Consequently, the court determined that the evidence seized pursuant to the traffic stop was "lawfully obtained" and denied defendant's motion.

N.C. Gen. Stat. § 20-129 (2009) provides in pertinent part that "[e]very vehicle upon a highway within this State" is required to have its headlights and taillights on

[a]t any . . . time when windshield wipers are in use as a result of smoke, fog, rain, sleet, or snow, or when inclement weather or environmental factors severely reduce the ability to clearly discern persons and vehicles on the street and highway at a distance of 500 feet ahead, provided, however, the provisions of this subdivision shall not apply to instances when windshield wipers are used intermittently in misting rain, sleet, or snow.

N.C. Gen. Stat. § 20-129(a)(4). In turn, N.C. Gen. Stat. § 20-4.01(13) (2009), provides that "[t]he terms 'highway' and 'street' and their cognates are synonymous[,]" and include "[t]he entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic."

Defendant argues that "[t]he trial court's conclusion that Piedmont Circle is a public road is not supported by the findings of fact or the evidence of record and is incorrect as a matter of law." We note, as an initial matter, that the issue regarding whether a street is public or private is a question of fact. *See State v. Mark*, 154 N.C. App. 341, 345-46, 571 S.E.2d 867, 870 (2002) (addressing whether evidence was sufficient to support "reasonable inference" that road on which defendant was driving was public or private road), *aff'd per curiam*, 357 N.C. 242, 580 S.E.2d 693 (2003); *State v. Bowen*, 67 N.C. App. 512, 514-15, 313 S.E.2d 196, 197-98 (holding trial court could not determine as a "matter of law" that driveway into condominium complex was public vehicular area where evidence was conflicting but concluding

that evidence was "sufficient to take the case to the jury"), *appeal dismissed,* 312 N.C. 79, 320 S.E.2d 405 (1984); *see also State v. Mikolinski,* 56 Conn. App. 252, 261, 742 A.2d 1264, 1270 (1999) ("The question of whether a roadway is a public highway is a question of fact."), *aff'd,* 256 Conn. 543, 775 A.2d 274 (2001); *State v. Guillet,* 3 Conn. Cir. Ct. 380, 382, 215 A.2d 685, 687 (1965) ("Whether the defendant was operating a motor vehicle on a public highway, as the [DWI] statute requires, is a question of fact . . . ."); *State v. Scott,* 61 Or. App. 205, 208, 655 P.2d 1094, 1095 (1982) (holding that issue of whether streets in privately-owned condominium complex were open to the public was a question of fact). The trial court's determination, labeled as a conclusion of law, that Piedmont Circle is a "public road or highway," is thus more properly considered a finding of fact rather than a conclusion of law. *See In re Helms,* 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (defining conclusions of law as "any determination requiring the exercise of judgment or the application of legal principles" and findings of fact as "[a]ny determination reached through logical reasoning from the evidentiary facts" (internal citations and quotation marks omitted)). A trial court's "mislabeling" a determination, however, is "inconsequential" as the appellate court may simply re-classify the determination and apply the appropriate standard of review. *In re R.A.H.,* 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007). Accordingly, we review the trial court's finding that Piedmont Circle is a public street to determine whether it is supported by competent evidence. *Buchanan,* 353 N.C. at 336, 543 S.E.2d at 826.

Corporal Mabe testified that the Piedmont Circle apartment complex is property of the City of Winston-Salem and that the street Piedmont Circle, which runs through the apartment complex, is a "public road[.]" Corporal Mabe stated that he is assigned to patrol the Piedmont Circle complex and patrols the area every day. He also indicated that parking spots are provided for the apartment complex and that he saw cars parked along Piedmont Circle on 28 April 2008. This evidence is sufficient to support the trial court's finding that Piedmont Circle is a public street. *See State v. Cornett,* 177 N.C. App. 452, 454-55, 629 S.E.2d 857, 858 (holding that evidence was sufficient to support inference that road on which defendant was driving was "open[] to vehicular traffic" within meaning of DWI statute where both police officer and defendant testified that they drove on road and "there were no gates or signs indicating that it was a private road"), *appeal dismissed and disc. review denied,* 361 N.C. 172, 640 S.E.2d 56 (2006); *Bowen,* 67 N.C. App. at 515, 313 S.E.2d at 197-98

(concluding that evidence was sufficient to permit jury to reasonably conclude driveway into condominium complex was a "public vehicular area" where evidence showed that driveway was accessible from public highway, "appeared to serve a normal apartment complex," "For Sale" signs indicated public was permitted in complex, and parking was provided).

Defendant counters, however, that Piedmont Circle is not a public street, pointing to photographs he presented at the suppression hearing showing "No [T]respassing" signs posted somewhere in the Piedmont Circle apartment complex. Corporal Mabe, however, testified that he was not familiar with the signs and defendant did not present any evidence indicating that the signs were posted at the time of the stop. Nor did defendant present any evidence indicating to what specific property the no trespassing signs referred. We also note that although defendant presented photographs of street signs of other streets in the Piedmont Circle complex with green backgrounds and white lettering, indicating that they are public streets, defendant did not present a photograph of the street sign for Piedmont Circle itself. In short, the evidence presented at the suppression hearing is conflicting.

Where, as here, " 'there is a conflict between the [S]tate's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal.' " *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997) (quoting *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982)); *accord State v. Johnson*, 322 N.C. 288, 293, 367 S.E.2d 660, 663 (1988) ("[M]erely because there is evidence from which a different conclusion could have been reached does not warrant a reversal of the trial court's finding of fact. It is the trial court's duty to resolve any conflicts and contradictions that may exist in the evidence." (internal citations omitted)). As the trial court was entitled—and, in deed, required—to resolve the conflict between the State's evidence and defendant's evidence regarding whether Piedmont Circle is a public road, its determination, supported by competent evidence, will not be disturbed on appeal.

Defendant argues on appeal, as he did at the suppression hearing, that even if Piedmont Circle is a public street, N.C. Gen. Stat. § 20-129 does not apply to Piedmont Circle. In support of his argument, defendant relies on *Coleman v. Burris*, 265 N.C. 404, 409, 144 S.E.2d 241, 244-45 (1965), where the Supreme Court held that the provisions of N.C. Gen. Stat. § 20-129 "are not applicable" to roads within the

municipal street system, but, rather, apply only to those highways or streets that form part of the State highway system. *Compare* N.C. Gen. Stat. § 136-66.1(1) (2009) ("The State highway system inside the corporate limits of municipalities shall consist of a system of major streets and highways necessary to move volumes of traffic efficiently and effectively from points beyond the corporate limits of the municipalities through the municipalities and to major business, industrial, governmental and institutional destinations located inside the municipalities.") *with* N.C. Gen. Stat. § 136-66.1(2) ("In each municipality the municipal street system shall consist of those streets and highways accepted by the municipality which are not a part of the State highway system.").

*Coleman,* however, was decided eight years before the enactment of N.C. Gen. Stat. § 20-4.01, the statute defining the term "highway" used in N.C. Gen. Stat. § 20-129. The language in N.C. Gen. Stat. § 20-4.01(13) is broader than the Court's holding in *Coleman*: the statute defines the term "highway"—and its synonym "street"—as "[t]he entire width between property or right-of-way lines of every way or place of whatever nature, *when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic.*" (Emphasis added.) We interpret N.C. Gen. Stat. § 20-129 and N.C. Gen. Stat. § 20-4.01 according to the plain meaning of their terms. *See Smith v. Powell,* 293 N.C. 342, 346, 238 S.E.2d 137, 140 (1977) (holding that "[t]he definition of 'highway' in G.S. 20-4.01(13)" should be given its "plain and ordinary meaning" and "given the same connotation" to all provisions in Chapter 20 of the General Statutes "unless the context requires otherwise"). The broad definition of a highway or street in N.C. Gen. Stat. § 20-4.01(13) does not include a requirement that the highway or street be a part of the State highway system—only that it be "open to the use of the public as a matter of right for the purposes of vehicular traffic." Because defendant was "upon a [street] within this State" that is "open to the use of the public as a matter of right for the purposes of vehicular traffic," defendant was required to comply with N.C. Gen. Stat. § 20-129(a)(4).

Our holding that N.C. Gen. Stat. § 20-129 applies to all highways or streets as defined by N.C. Gen. Stat. § 20-4.01, including Piedmont Circle, is buttressed by examining other motor vehicle laws in Chapter 20 of the General Statutes using similar language. *See Redevelopment Commission v. Bank,* 252 N.C. 595, 610, 114 S.E.2d 688, 698 (1960) ("It is a fundamental rule of statutory construction that sections and acts *in pari materia,* and all parts thereof, should

be construed together and compared with each other."). N.C. Gen. Stat. § 20-28(a) (2009), for example, makes it a misdemeanor for "any person whose drivers license has been revoked" to "drive[] any motor vehicle *upon the highways of the State* . . . ." (Emphasis added.) Applying defendant's rationale to N.C. Gen. Stat. § 20-28(a) would mean that individuals whose licenses have been revoked could drive on public highways and streets without violating the statute so long as they do not drive on highways and streets within the State highway system. We do not believe that the General Assembly intended to expose the general public to such an unreasonable danger. *See Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978) ("In construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results."). Likewise, N.C. Gen. Stat. § 20-10 (2009) prohibits any "person 14 years of age or under" to "operate any road machine, farm tractor or motor driven implement of husbandry *on any highway within this State*." (Emphasis added.) According to defendant, however, any person under the age of 14 could legally drive a farm tractor on any public highway or street in North Carolina so long as the road was not part of the State highway system. Again, we seriously doubt that the Legislature intended such an untoward result.

On appeal, defendant does not contend that his taillights were on while his windshield wipers were operating on 28 April 2008. Nor does he argue that if, as we have concluded, Piedmont Circle is a public street to which N.C. Gen. Stat. § 20-129 applies, Corporal Mabe did not have reasonable suspicion to stop him for violating the motor vehicle statute. Since we have held that Piedmont Circle is a public street under N.C. Gen. Stat. § 20-4.01(13) and that N.C. Gen. Stat. § 20-129(a)(4) applies to all public streets, the trial court properly concluded that Corporal Mabe had a reasonable suspicion to believe that defendant was committing a traffic violation when he observed defendant driving on Piedmont Circle using his windshield wipers in the inclement weather but not having his taillights on.

Our conclusion that Corporal Mabe correctly believed that Piedmont Circle is a public street, thus supporting a finding of reasonable suspicion that defendant had committed a traffic violation, distinguishes this case from the line of decisions holding that a law enforcement officer's mistaken belief that a defendant had committed a traffic violation is constitutionally insufficient to support a

traffic stop. *See, e.g., State v. Ivey*, 360 N.C. 562, 565, 633 S.E.2d 459, 461-62 (2006) (holding that where defendant's failure to use turn signal did not constitute a traffic violation, police officer's stop was unreasonable), *overruled in part on other grounds by State v. Styles*, 362 N.C. 412, 665 S.E.2d 438 (2008); *State v. McLamb*, 186 N.C. App. 124, 127, 649 S.E.2d 902, 904 (2007) (concluding that where deputy stopped defendant based on mistaken belief that defendant was speeding, "the legal justification for th[e] traffic stop was not objectively reasonable" and "the stop violated defendant's Fourth Amendment rights"), *disc. review denied*, 362 N.C. 368, 663 S.E.2d 433 (2008). As the trial court's conclusion that Corporal Mabe had reasonable suspicion to believe that defendant had committed a traffic violation is supported by its findings and the evidence, we affirm the trial court's order denying defendant's motion to suppress.

Affirmed.

Judges CALABRIA and HUNTER, Robert N., Jr. concur.