An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-973

Filed 6 August 2025

Forsyth County, No. 20 JA 000121-330

In Re: B.I.C.M.

Appeal by respondent-mother from order entered 3 April 2024 by Judge David Sipprell in Forsyth County District Court. Heard in the Court of Appeals 23 April 2025.

> *BJK Legal by Benjamin J. Kull for respondent-appellant mother.*
>
> *Theresa A. Boucher for petitioner-appellee Forsyth County DSS*
>
> *Michelle F. Lynch, for Guardian Ad Litem.*

PER CURIAM.

Respondent-Mother ("Mother") appeals an order of guardianship. For the reasoning below, we affirm the order of the trial court.

## I. Background

Mother has three children, who have inconsistently been in her custody due to her mental health struggles.

On 14 August 2020, Forsythe County Department of Social Services ("FCDSS") filed a juvenile petition following a psychotic breakdown by Mother, and nonsecure custody was granted for the children.

On 21 September 2020, the children were adjudicated to be neglected juveniles based on findings that their home environment was injurious to their welfare and that they lacked sufficient care and oversight. On 29 July 2022, Mother progressed in her case plan and regained custody of her children.

Shortly thereafter, Mother was involuntarily committed at UNC Psychiatric Emergency Services where she was diagnosed with schizoaffective disorder, bipolar type. In October 2022, FCDSS filed another juvenile petition. The following day, Mother's youngest child, Bianca,[1] was placed in the care of her paternal grandmother, Tanya Adams, at the age of three.

On 9 January 2023, after adjudicating Bianca as a neglected and dependent juvenile, the court granted guardianship to Mrs. Adams. At the first permanency planning hearing for Bianca on 3 April 2023, the trial court adopted a permanent plan of reunification with a secondary plan of guardianship with relatives for Mother's children. At the second permanency planning hearing on 4 October 2023, the trial court revised the permanent plan to guardianship with a secondary plan of reunification. Bianca remained with Mrs. Adams.

---

[1] A pseudonym.

When a third permanency planning hearing was scheduled for 3 April 2024, Mother's counsel filed a motion to continue the hearing to a later date and then orally moved for a continuance once the hearing commenced because of the breadth of her evidence. Her motions were denied. The trial court, however, permitted Mother's counsel to offer four documentary exhibits into evidence pertaining to the testimony of the witnesses the counsel was unable to call due to time constraints. Mother's counsel intended to call one of Mother's therapists and Mother's case manager.

The trial court found Mother was acting inconsistent with the health or safety of her children and contrary to her constitutionally protected status as a parent. Mother's drug tests on 21 December 2023 and 16 January 2024 confirmed the presence of cocaine in her hair. The trial court also determined that, though Mother was actively engaged in the permanent plan, she was not progressing at a reasonable rate, not attending group therapy as advised, confused about the rationale for the removal of her children, and not taking all medications prescribed to her for "mood," anxiety, and sleep. The trial court delegated guardianship of Bianca to Mrs. Adams due to Mother's lack of sufficient progress on her case plan. Mother appeals.

## II. Analysis

On appeal, Mother raises three issues, which we address in turn.

### A. Constitutionally Protected Status

Mother argues the trial court erred in granting guardianship, specifically contending the trial court's findings do not support its conclusion that Mother was

acting contrary to her constitutionally protected status as a parent, a conclusion required before a trial court may order guardianship as a permanent plan.

When considering whether a mother's actions conflict with her constitutionally protected status as a parent, this court reviews a trial court's findings *de novo,* which must be supported by "clear and convincing evidence." *In re B.R.W.,* 381 N.C. 61, 77 (2022).[2] Identifying the trial court's finding that Mother's actions conflict with her constitutionally protected status as a parent a conclusion of law, we review this conclusion *de novo*.

To support her argument, Mother points to several findings made by the trial court. For instance, she points to findings that she had been "actively participating in or cooperating with the plan" and was making herself available to the trial court and DSS. She points to the finding that she was participating in mental health treatments and was not struggling with anxiety.

Though Mother addresses appellee's argument concerning hydroxyzine, she neglects to address her failure to take the other medications prescribed to her by Daymark. This finding of fact is supported by competent evidence in the record. Daymark's medical records include Mother's Abilify prescription, instructing her to: "take 1 tablet by oral route every night for mood." Mother had discontinued the use

---

[2] The trial court determined Mother was acting contrary to her constitutionally protected status as a parent in a finding of fact instead of in a conclusion of law. However, as we have held, "the appellate court may simply re-classify the determination and apply the appropriate standard of review." *State v. Hopper*, 205 N.C. App. 175, 179 (2010).

of Abilify as of 31 January 2022, and she subsequently received psychiatric treatment in October of 2022. Mother was not taking the Remeron for sleep as of 23 January 2024. Thus, competent evidence supports the trial court's finding that Mother was not taking her mental health medications as prescribed by the practitioners.

Further, there was evidence to support the findings that Mother was not fully understanding how her mental health issues were impairing her parenting abilities. This court has considered an individual's lack of understanding of the necessity of treatment as one factor evidencing the potential for relapse into past medical habits. *In re N.B.*, 240 N.C. App. 353, 359 (2015).

Mother contests a number of findings. For instance, she contends that finding 20 implies she has neglected her duty to pay child support. There was conflicting evidence on this point, and the trial court made its finding that Mother had neglected this duty in the care of Bianca. *In re J.M.,* 384 N.C. at 591 ("The trial [court's] decisions as to the weight and credibility of the evidence, and the inferences drawn from the evidence.").

The trial court found in finding 74 that Mother was not progressing within a reasonable time under the permanent plan that had been in place. Mother was required to create a Wellness Recovery Plan detailing how her mental health prevents her from caring for her children. Finding 50 describes this plan and Mother's work on a Wellness Recovery Plan outline. Mother does not address *the*

*timespan and speed* of her progress, which a trial court must consider when evaluating a parent's efforts at reunification. N.C.G.S. § 7B-906.2(d) (2021).

Mother also contests Finding 48, reasoning it suggests she tested positive for cocaine on 8 November 2023 and 14 December 2023 when she only tested positive on the latter date. The record though does contain lab reports confirming cocaine in Mother's system on 14 December 2023 and 16 January 2024.

Our Supreme Court has held that "[u]nfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents." *Price v. Howard*, 346 N.C. 68, 79 (1997).

We have reviewed the order and the record. While there are findings that Mother was making progress in certain areas, they also demonstrate that she was still taking illegal drugs, she was not taking prescribed drugs consistently, and she had fallen short in other areas. We conclude there is clear and convincing evidence to support the trial court's conclusion that Mother has acted inconsistently with her constitutionally protected right as a parent. We further hold that the trial court did not err in determining guardianship to be the appropriate permanent plan.

### B. Motion to Continue

Mother contends the trial court erred in denying Mother's motion to continue. Mother moved to continue prior to trial, explicitly arguing in her motion she had a

due process right as a parent to offer evidence. Mother requested the court reschedule the permanency planning hearing since the scheduled time of 3pm on 3 April 2024 would not allow "sufficient time to complete the hearing."

When a party moves to continue prior to trial and asserts a constitutional ground for the motion, the standard of review applied to the motion is *de novo*. *In re C.A.B.*, 381 N.C. 105, 112 (2022). The appealing party must demonstrate, "that the denial was erroneous, and that he suffered prejudice as a result of the error." *State v. Walls*, 342 N.C. 1, 24 (1995).

In determining whether a parent's due process rights have been violated by a denial of a continuance, a court will evaluate: "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *In re C.A.B.*, 381 N.C. at 115 (2022) (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)).

Mother contends the timing of the hearing created a risk of error because it limited the testimony she could offer to the court. Because it was already mid-afternoon, the trial court allowed Mother the opportunity to call two witnesses. She decided to call two witnesses who lacked knowledge of her mental health treatments and prescriptions rather than two other witnesses who did have such knowledge. On appeal, she claims that she should have been able to call the other two witnesses and

that their testimony may have caused the trial court to enter different findings concerning her mental health.

We note, however, that the trial court did allow Mother to present an offer of proof with respect to how each witness would have testified in the light most favorable to Mother and without having to undergo cross-examination. The trial court also allowed Mother to present a detailed report prepared by one of the witnesses. The trial court included the proffer in its calculus in making its findings concerning Mother's mental health. Based on our review of the record, we conclude that the trial court did not prejudicially err in denying Mother's motion to continue.

## C. Consideration of Competent Evidence

Finally, Mother contends that the trial court abused its discretion by failing to consider competent and relevant evidence when granting guardianship. We note that Mother has not specifically challenged many of the findings which support the trial court's decision. Accordingly, those findings are binding on appeal. *In re L.T.R.*, 181 N.C. App. 376, 381 (2007). And these unchallenged findings support the trial court's decision to grant guardianship.

## III. Conclusion

We conclude that the trial court did not err in granting guardianship to Ms. Adams.

AFFIRMED.

Panel consisting of Chief Judge DILLON and Judges WOOD and STADING.

Report per Rule 30(e).