MURPHY, Judge.
 

 *791
 
 Daryl Lee Cromartie ("Defendant") appeals from judgment entered upon his convictions for attaining habitual felon status, common law robbery, misdemeanor larceny, fleeing to elude arrest, resisting a public officer, and simple assault. Defendant argues the trial court erred by: (1) admitting Deputy Snyder's prejudicial and inadmissible hearsay into evidence; (2) failing to arrest judgment for the larceny and assault convictions; and (3) failing to dismiss the charge of resisting an officer where no evidence satisfied the allegation in the indictment. For the reasons discussed, we hold the trial court did not commit prejudicial error in allowing Deputy Snyder's testimony into evidence, and did not err by denying Defendant's motion to dismiss the resisting a public officer charge. The trial court, however, did err by failing to arrest
 
 *769
 
 judgment on Defendant's convictions for non-felonious larceny and simple assault.
 

 I. Background
 

 Defendant was arrested on 14 December 2015 and indicted by a Duplin County Grand Jury on 21 March 2016 on charges of misdemeanor fleeing to elude arrest with a motor vehicle, resisting, obstructing or delaying a public officer, common law robbery, felony larceny, and simple assault. A Duplin County Grand Jury additionally indicted Defendant for attaining habitual felon status on 31 May 2016.
 

 Defendant's trial began on 6 September 2016. The evidence at trial tended to show that after assaulting his girlfriend on 14 December 2015, Defendant stopped a man on a moped, pulled the man off the moped and assaulted the man, and then drove away on the man's moped. Responding law enforcement officers quickly located Defendant, who then fled from the officers on the moped. During the pursuit, Defendant drove the moped behind a Dollar General store and out of the view of a pursuing sheriff's deputy. When the Deputy regained sight of Defendant, Defendant was standing approximately 15 to 20 feet from the moped, which was overturned and lying in a ditch. Defendant was arrested.
 

 *792
 
 On 7 September 2016, the jury returned verdicts finding Defendant guilty of misdemeanor fleeing to elude arrest, resisting, obstructing, or delaying a public officer, common law robbery, non-felonious larceny, and simple assault. Following the jury verdicts, Defendant pleaded guilty to attaining habitual felon status. The trial court consolidated all of the offenses and entered a single judgment sentencing Defendant in the mitigated range to a term of 58 to 82 months imprisonment. Defendant gave notice of appeal in open court.
 

 II. Analysis
 

 A. Hearsay
 

 On appeal, Defendant first contends the trial court erred in admitting testimony from Deputy Sheriff Steven Snyder over his objections. Defendant claims the challenged testimony was inadmissible hearsay and that its admission was prejudicial to his case. We disagree that Defendant was prejudiced by the challenged testimony.
 

 "When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed
 
 de novo
 
 ."
 
 State v. Johnson
 
 ,
 
 209 N.C. App. 682
 
 , 692,
 
 706 S.E.2d 790
 
 , 797 (2011). But, even if the trial court admits hearsay in error, "[t]he erroneous admission of hearsay testimony is not always so prejudicial as to require a new trial, and the burden is on the defendant to show prejudice."
 
 State v. Allen
 
 ,
 
 127 N.C. App. 182
 
 , 186,
 
 488 S.E.2d 294
 
 , 297 (1997) (citations omitted);
 
 see
 
 N.C.G.S. § 15A-1443(a) (2015). "Evidentiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial."
 
 State v. Ferguson
 
 ,
 
 145 N.C. App. 302
 
 , 307,
 
 549 S.E.2d 889
 
 , 893 (2001) (citation omitted).
 

 Under the North Carolina Rules of Evidence, "[h]earsay is not admissible except as provided by statute or by [the] rules." N.C.G.S. § 8C-1, Rule 802 (2015). " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c). "When evidence of such statements by one other than the witness testifying is offered for a proper purpose other than to prove the truth of the matter asserted, it is not hearsay and is admissible."
 
 State v. Coffey
 
 ,
 
 326 N.C. 268
 
 , 282,
 
 389 S.E.2d 48
 
 , 56 (1990).
 

 The testimony at issue in this case concerned Defendant's alleged assault of his girlfriend prior to the events giving rise to the charges in this case. Deputy Snyder testified that he was on a dayshift patrol on 14 December 2015 when a female at a gas station flagged him down.
 

 *793
 
 Deputy Snyder recalled that the woman ran to his car, crying hysterically, and told him that she had just been assaulted. Defendant objected to the testimony, claiming it was hearsay. The trial court, however, overruled Defendant's objection and instructed the State to "[l]ay a foundation for the purpose of the call in reference to the stop." Deputy Snyder then continued to explain the situation. When the
 
 *770
 
 State inquired whether the woman identified her assaulter to Deputy Snyder, Defendant objected on hearsay grounds. Over Defendant's objection, Deputy Snyder was allowed to testify that the woman told him the name of her assaulter. The name she gave Deputy Snyder was Defendant's name. Deputy Snyder also testified that he asked the woman where Defendant was heading when Defendant left the gas station. Overruling another hearsay objection by Defendant, the trial court allowed Deputy Snyder to testify that the woman told him "[Defendant] flagged down a white pickup and was heading North on 117." When local units arrived at the gas station, Deputy Snyder left heading north on the lookout for Defendant.
 

 Defendant now admits that it initially appeared the testimony was elicited to explain Deputy Snyder's subsequent conduct, which Defendant recognizes to be a valid purpose. Indeed, "[w]e have held statements of one person to another to explain subsequent actions taken by the person to whom the statement was made are admissible as nonhearsay evidence."
 
 State v. Golphin
 
 ,
 
 352 N.C. 364
 
 , 440,
 
 533 S.E.2d 168
 
 , 219 (2000) (quotation omitted). Yet, Defendant contends the trial court ultimately admitted the evidence for substantive purposes when it instructed the jury that the testimony could be considered evidence of motive and identity. The trial court's instructions were as follows:
 

 Evidence has been received tending to show that [D]efendant assaulted his girlfriend at the time that the crime was committed in this case. This evidence was received solely for the purpose of showing the identity of the person who committed the crime charged in this case, if it was committed, and that [D]efendant had a motive for commission of the crime charged in this case. If you believe this evidence, you may consider it but only for the limited purpose for which it was received. You may not consider it for any other purpose.
 

 Upon review of the jury instructions, it appears the trial court was attempting to limit the consideration of the evidence in accordance with N.C.G.S. § 8C-1, Rule 404(b), which states:
 

 *794
 
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
 

 However, in doing so, the trial court changed the nature of the evidence from nonhearsay, when the testimony is considered solely to explain Deputy Snyder's subsequent conduct, to hearsay, when the testimony is considered as proof of identity and motive. That is because in order for the jury to consider the challenged testimony as evidence of identity and motive, the jury would have to consider the testimony for the truth of the matter asserted, even though the testimony did not directly concern the crimes charged in this case. Thus, while the challenged testimony was admissible to explain Deputy Snyder's subsequent conduct, it was error for the trial court to admit the testimony as evidence of Defendant's identity and motive. When the testimony is considered for the truth of the matter asserted, it is hearsay.
 

 Nevertheless, the trial court's admission of the challenged testimony for purposes of proving identity and motive was harmless error. To show prejudice, Defendant must show that "there was a reasonable possibility that a different result would have been reached at trial if the error had not been committed."
 
 State v. Hickey
 
 ,
 
 317 N.C. 457
 
 , 473,
 
 346 S.E.2d 646
 
 , 657 (1986) (citations omitted).
 

 Defendant contends the challenged testimony was "highly prejudicial" in this case because the crux of his defense was that the State failed to provide sufficient evidence of his intent in taking the moped. Defendant asserts that, absent the testimony, there was no evidence of his motivation for taking the moped or that he intended to keep the moped. Defendant further asserts that the jury was much less likely to doubt that he intended to permanently deprive the victim of the moped after learning that he assaulted his girlfriend and was running away from her. We disagree.
 

 *771
 
 Absent the challenged testimony, there was ample evidence for the jury to convict Defendant of the charged offenses. Specifically, evidence was presented that the victim, the owner of the moped, was stopped by a man standing in the road blocking his way. The man approached the victim and grabbed hold of the front of the moped. The victim testified that the man began to ask him questions about the moped and stated, "I like that scooter[ ]" and "I need to get me one." When the victim attempted
 
 *795
 
 to back up to go around the man, the man, who still had hold of the front of the moped, reached over the handlebars, grabbed the victim by the coat collar, and pulled the victim off of the moped. The moped fell to the ground and the man beat the victim and slung him around on the road. A struggle ensued. Eventually, the man was able to break free from the victim and took off on the moped. When asked to describe what the man looked like, the victim identified Defendant, pointing to him in the courtroom and stating, "[t]hat's him right there[.]" Furthermore, testimony was given that deputies spotted Defendant on the moped shortly thereafter and pursued Defendant until he crashed the moped in a ditch.
 

 Given the ample evidence in this case, there is not a reasonable possibility of a different outcome even if the challenged testimony had not been admitted at trial. Thus, the trial court did not commit prejudicial error when it admitted the testimony as evidence of Defendant's identity and motive.
 

 B. Double Jeopardy
 

 Defendant also argues the trial court erred by failing to arrest judgment on his convictions for non-felonious larceny and simple assault. Defendant now contends this error amounts to a violation of his right to be free from double jeopardy.
 

 "The standard of review for alleged violations of constitutional rights is
 
 de novo
 
 ."
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009) (citation omitted). Yet, "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal."
 
 State v. Hunter
 
 ,
 
 305 N.C. 106
 
 , 112,
 
 286 S.E.2d 535
 
 , 539 (1982) (citations omitted). "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent."
 
 State v. Eason
 
 ,
 
 328 N.C. 409
 
 , 420,
 
 402 S.E.2d 809
 
 , 814 (1991) ;
 
 see also
 
 N.C. R. App. P. 10(a)(1) (2017). Particularly relevant to this case, this Court has stated that,
 

 [t]he constitutional right not to be placed in jeopardy twice for the same offense, like other constitutional rights, may be waived. To avoid waiving this right, a defendant must properly raise the issue of double jeopardy before the trial court. Failure to raise this issue at the trial court level precludes reliance on the defense on appeal. Simply put, double jeopardy protection may not be raised on appeal
 
 *796
 
 unless the defense and the facts underlying it are brought first to the attention of the trial court.
 

 State v. White
 
 ,
 
 134 N.C. App. 338
 
 , 342,
 
 517 S.E.2d 664
 
 , 667 (1999) (quotation marks and citations omitted).
 

 In this case, Defendant moved to dismiss all charges at the close of the State's evidence, only specifically arguing against the resisting a public officer charge. Defendant then renewed "the same motions to dismiss for the same reasons[ ]" at the close of all of the evidence. Defendant also later moved to set aside the verdicts on the basis that they were "against the greater weight of the evidence." Defendant, however, never argued a double jeopardy violation to the trial court. As the double jeopardy issue was never raised to the trial court, Defendant has not preserved the issue for review on appeal.
 

 Nevertheless, recognizing his possible error below, Defendant asserts on appeal that, if the issue was not preserved for appeal, we should invoke Rule 2 to reach the merits of the issue or we should determine whether he received ineffective assistance of counsel. To prevent manifest injustice to Defendant in this case, we choose to invoke Rule 2 and address the merits of Defendant's argument.
 
 See
 
 N.C. R. App. P. Rule 2 ("To prevent manifest injustice to a party, ... either court of the appellate division may, except as otherwise expressly provided by these rules,
 
 *772
 
 suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.").
 

 "Under the Double Jeopardy Clause, when one offense is a lesser-included offense of another, the two offenses are considered the same criminal offense."
 
 State v. Schalow
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 567
 
 , 579 (2016) (citations omitted),
 
 disc. review allowed
 
 ,
 
 369 N.C. 521
 
 ,
 
 796 S.E.2d 791
 
 (2017). This Court has held that larceny is a lesser included offense of common law robbery.
 
 State v. White
 
 ,
 
 322 N.C. 506
 
 , 517 n.1,
 
 369 S.E.2d 813
 
 , 819 n.1 (1988) (reaffirming the Court's prior holding that larceny is a lesser included offense of common law robbery) (citing
 
 State v. Young
 
 ,
 
 305 N.C. 391
 
 , 393,
 
 289 S.E.2d 374
 
 , 376 (1982) ). Likewise, assault is a lesser included offense of common law robbery.
 
 See
 

 State v. White
 
 ,
 
 142 N.C. App. 201
 
 , 204,
 
 542 S.E.2d 265
 
 , 268 (2001) ("Our appellate courts have stated several times that the crime of common law robbery includes an assault on the person."). Upon review, it is clear the trial court erred in sentencing Defendant for the non-felonious larceny and simple assault convictions in this case because those offenses arose out of the same facts as the common law robbery. As a result, the
 
 *797
 
 entry of judgment on the common law robbery conviction and the lesser included non-felonious larceny and simple assault convictions violated Defendant's right to be free from double jeopardy.
 

 The State does not contest that the convictions do not violate double jeopardy, and in fact concedes that larceny and assault are lesser included offenses of common law robbery. Instead, the State, assuming there was a double jeopardy violation, argues Defendant was not prejudiced by the violation because all convictions were consolidated for judgment and Defendant received a single sentence. In fact, Defendant received the lowest possible sentence that he could have received in the mitigated range. Therefore, although typically "[w]hen the trial court consolidates multiple convictions into a single judgment but one of the convictions was entered in error, the proper remedy is to remand for resentencing,"
 
 State v. Hardy
 
 ,
 
 242 N.C. App. 146
 
 , 160,
 
 774 S.E.2d 410
 
 , 420 (2015), we do not remand for resentencing where Defendant has already received the lowest possible sentence because remanding when one of the convictions of a consolidated sentence is in error is based on the premise that multiple offense probably influenced the defendant's sentence.
 
 See
 

 State v. Wortham
 
 ,
 
 318 N.C. 669
 
 , 674,
 
 351 S.E.2d 294
 
 , 297 (1987) (remanding for resentencing when one or more, but not all, of the convictions consolidated for judgment have been vacated because conviction for two or more offenses influences adversely to a defendant the trial court's judgment on the length of the sentence to be imposed when these offenses are consolidated for judgment). We would only remand after arresting judgment if "we were unable to determine what weight, if any, the trial court gave to each of the separate convictions...."
 
 See
 

 State v. Moore
 
 ,
 
 327 N.C. 378
 
 , 383,
 
 395 S.E.2d 124
 
 , 127-28 (1990). Here, Defendant received the lowest possible sentence and we need not remand for resentencing.
 

 Nevertheless, the State's argument ignores the collateral consequences of the judgment. Our Supreme Court has stated, "[t]hat the offenses were consolidated for judgment does not put to rest double jeopardy issues, because the separate convictions may still give rise to adverse collateral consequences."
 
 State v. Etheridge
 
 ,
 
 319 N.C. 34
 
 , 50,
 
 352 S.E.2d 673
 
 , 683 (1987) (citations omitted). The proper recourse in this case is for us to arrest judgment on Defendant's convictions for non-felonious larceny and simple assault so as to avoid any collateral consequences.
 
 See
 

 State v. Jaynes
 
 ,
 
 342 N.C. 249
 
 , 276,
 
 464 S.E.2d 448
 
 , 465 (1995) (arresting judgment on two lesser included larceny convictions),
 
 cert. denied
 
 ,
 
 518 U.S. 1024
 
 ,
 
 116 S.Ct. 2563
 
 ,
 
 135 L.Ed. 2d 1080
 
 (1996). We arrest judgment on the larceny and assault convictions.
 

 *798
 

 C. Motion to Dismiss
 

 In his last argument on appeal, Defendant argues the trial court erred in denying his motion to dismiss the resisting a public officer charge because of a fatal variance between the indictment and the evidence. We disagree. In the light most favorable
 
 *773
 
 to the State, the direct and circumstantial evidence demonstrates that Defendant continued to elude Deputy Boyette on foot after the moped overturned.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "In ruling on a motion to dismiss, the evidence must be considered by the court in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence."
 
 State v. Bullard
 
 ,
 
 312 N.C. 129
 
 , 160,
 
 322 S.E.2d 370
 
 , 387-88 (1984) (citation omitted). "The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witnesses' credibility.... Ultimately, the court must decide whether a reasonable inference of defendant's guilt may be drawn from the circumstances."
 
 State v. Blizzard
 
 ,
 
 169 N.C. App. 285
 
 , 289-90,
 
 610 S.E.2d 245
 
 , 249 (2005) (quotation omitted).
 

 "The elements of resisting an officer are that a person 'willfully and unlawfully resisted, delayed or obstructed a public officer in discharging or attempting to discharge a duty of his office.' "
 
 State v. Shearin
 
 ,
 
 170 N.C. App. 222
 
 , 223,
 
 612 S.E.2d 371
 
 , 380 (2005) (quoting N.C.G.S. § 14-223 ). We have "previously recognized that an indictment for the charge of resisting an officer must: 1) identify the officer by name, 2) indicate the official duty being discharged, and 3) indicate generally how [the] defendant resisted the officer."
 
 State v. Henry
 
 ,
 
 237 N.C. App. 311
 
 , 322,
 
 765 S.E.2d 94
 
 , 102-103 (2014),
 
 disc. review denied
 
 , --- N.C. ----,
 
 775 S.E.2d 852
 
 (2015) (quotation omitted).
 

 Here, the indictment for resisting an officer specified that Defendant resisted "by running away from Cody Boyette on foot." The evidence at trial tended to show that Deputy Boyette was in hot pursuit of Defendant when Defendant went behind the Dollar General. At some point between when Defendant went behind the store and when Deputy Boyette arrived behind the store, Defendant traversed approximately 15 to 20 feet from the stolen and overturned moped. It is a reasonable inference that Defendant covered this distance on foot. Therefore, contrary to the analysis set forth in the dissent, there was sufficient evidence presented to the jury to find that Defendant ran away from Deputy Boyette on foot, as alleged in the indictment. The trial court did not err by denying Defendant's motion to dismiss for a fatal variance.
 

 *799
 

 III. Conclusion
 

 For the reasons discussed, we hold the trial court did not commit prejudicial error in allowing Deputy Snyder's testimony into evidence, and did not err by denying Defendant's motion to dismiss the resisting a public officer charge. The trial court, however, did err by failing to arrest judgment on Defendant's convictions for non-felonious larceny and simple assault.
 

 NO ERROR IN PART, ARRESTED IN PART.
 

 Judge BRYANT concurs.
 

 Judge ARROWOOD concurs in part and dissents in part.
 

 ARROWOOD, Judge, concurring in part, dissenting in part.
 

 I concur in that portion of the majority opinion that holds that the trial court did not commit prejudicial error in allowing Deputy Snyder's testimony into evidence. I also concur in the finding that the trial court committed error by failing to arrest judgment on defendant's convictions for non-felonious larceny and simple assault.
 

 I dissent from that portion of the majority opinion that finds that the trial court did not err in denying defendant's motion to dismiss the charge of resisting a public officer. I believe that there is a fatal variance between the charge alleged in the indictment and the State's evidence at trial, thus, I vote to reverse the conviction for resisting a public officer.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). Furthermore,
 

 [i]t is well established that "[a] defendant must be convicted, if at all, of the particular offense charged in the indictment" and that "[t]he State's proof must conform to
 
 *774
 
 the specific allegations contained" therein.
 
 State v. Pulliam
 
 ,
 
 78 N.C. App. 129
 
 , 132,
 
 336 S.E.2d 649
 
 , 651 (1985). Thus, "a fatal variance between the
 
 allegata
 
 and the
 
 probata
 
 " is properly the subject of a motion to dismiss for insufficiency of the evidence to sustain a conviction.
 
 State v. Nunley
 
 ,
 
 224 N.C. 96
 
 , 97,
 
 29 S.E.2d 17
 
 , 17 (1944). The rationale for this rule is "to insure that the defendant is able to prepare his defense against the crime with which
 
 *800
 
 he is charged, and to protect the defendant from another prosecution for the same incident."
 
 State v. Norman
 
 ,
 
 149 N.C. App. 588
 
 , 594,
 
 562 S.E.2d 453
 
 , 457 (2002). However, not every variance is fatal, because "[i]n order for a variance to warrant reversal, the variance must be material. A variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged."
 
 Id
 
 . (citation omitted). This Court has previously recognized that "an indictment for the charge of resisting an officer must: 1) identify the officer by name, 2) indicate the official duty being discharged, and 3) indicate generally how [the] defendant resisted the officer."
 
 State v. Swift
 
 ,
 
 105 N.C. App. 550
 
 , 553,
 
 414 S.E.2d 65
 
 , 67 (1992).
 

 State v. Henry
 
 ,
 
 237 N.C. App. 311
 
 , 322,
 
 765 S.E.2d 94
 
 , 102-103 (2014),
 
 disc. review denied
 
 , --- N.C. ----,
 
 775 S.E.2d 852
 
 (2015).
 

 Defendant moved to dismiss all charges at the conclusion of the State's evidence and specifically argued that the charge of resisting a public officer should be dismissed because the evidence of how defendant resisted the officer was "completely different from the indictment[.]" This is the same argument presented on appeal relating to the third essential element of the offense.
 

 The indictment in this case alleged that defendant resisted a sheriff's deputy "by running away from [the deputy] on foot[ ]" while the deputy was attempting to arrest defendant for larceny. A review of the record, however, reveals no evidence that defendant ran away from the deputy on foot. The sheriff's deputy named in the indictment, Cody Boyette, testified that as he was pursuing defendant, defendant pulled into a Dollar General store parking lot and went behind the business. Deputy Boyette lost sight of defendant for three or four seconds and when he regained sight of defendant, "[Deputy Boyette] saw the moped was overturned close to a ditch and [defendant] was
 
 standing
 
 approximately 15 to 20 feet away from it." (Emphasis added). Deputy Boyette then got out of his vehicle, drew his firearm and pointed it at defendant, and told defendant to get on the ground several times. After Deputy Boyette instructed him to get on the ground five or six times, defendant complied. Deputy Boyette then approached defendant and placed handcuffs on him.
 

 Both the State and the defense elicited additional testimony from Deputy Boyette to clarify defendant's movements after he crashed the moped in the ditch. In response to the State's initial questioning, Deputy Boyette reiterated that "[defendant] was standing 15 to 20 feet away
 
 *801
 
 [from the moped], and that's where he was at whenever I arrived from the pursuit." The following exchange took place:
 

 Q. So did he leave from the moped and got to that 15 to 20 feet and then he stopped; is that correct?
 

 A. Whenever I actually got out and drew my firearm, he had come to a complete stop.
 

 Q. But before then he had not?
 

 A. Yeah. By the time I laid eyes on him, he never moved any further or any less from the time I got there. He was looking for somewhere else to go.
 

 Q. So he fled on foot from that up until that 15 to 20 feet before you drew your weapon; is that correct?
 

 A. Yes, ma'am.
 

 During cross-examination by the defense, Deputy Boyette again testified about the end of his pursuit of defendant. The following exchange took place:
 

 Q. And when you exited your patrol vehicle, where was-where was [defendant]?
 

 A. If the-let's see, he was-from the point of the moped, he was probably about 10 or 15 feet east of the moped.
 

 Q. Okay. And was he walking?
 

 *775
 
 A. He was standing still at that point in time.
 

 Q. Okay. And then what happened?
 

 A. Like I said, I got out of my vehicle, I drew my firearm on Mr. Cromartie, and was commanding him to get down on the ground.
 

 Q. So after you got out, he didn't move?
 

 A. He was standing still, but he was looking around as if he was trying to find somewhere else to run to. It was a big, open spot in the back of Dollar General. It was a parking lot and a ditch.
 

 Q. So once you got out of the vehicle, he didn't move?
 

 A. Well he was standing still and he was looking for somewhere to go. Reason I drew any firearm, he had
 
 *802
 
 just robbed somebody and stole something, based off the traffic I heard. And there was also people around from where they heard us coming through town, so for my own safety and the safety of others, that's why I had my firearm out.
 

 Q. Did he run away from you?
 

 A. No, sir.
 

 ....
 

 [Q.] You also supervised or gave the magistrate information about the resisting a public officer, and it said that he did resist, delay, and obstruct Boyette, a public officer by running away from deputy on foot.
 

 A. He had got off the moped and started to run and stopped once I actually approached him.
 

 Q. Okay. So once you ordered him to stop, he stopped?
 

 A. Yes.
 

 During redirect-examination by the State, Deputy Boyette added that "[defendant] had already traveled away from the moped and he was standing in the area, but he was moving. He wasn't proceeding to any other location, but he was looking around trying to find somewhere else to go." In response to the defense's question on recross-examination as to how defendant was standing in one area and moving, Deputy Boyette explained that "[defendant] was standing still but moving his body."
 

 I believe it is clear from the evidence that defendant did not run away from Deputy Boyette once Boyette regained sight of defendant behind the Dollar General. The evidence is that defendant was standing still approximately 15 feet from the moped. In response to defendant's argument that this creates a fatal variance with the indictment, which states defendant "[ran] away from Cody Boyette on foot[,]" the State does not assert there is any direct evidence of defendant running from Deputy Boyette on foot. Instead, the State argues that viewing the evidence in the light most reasonable to the State, the evidence that defendant was approximately 15 feet away from the moped supports an inference that defendant ran from Deputy Boyette after crashing the moped in the ditch. Given the testimony from Deputy Boyette, the State's only witness on this charge, I do not think such an inference may be reasonably inferred.
 

 *803
 
 Because an indictment from resisting an officer must "indicate generally how [the] defendant resisted the officer[,]"
 
 Henry
 
 ,
 
 237 N.C. App. at 322
 
 ,
 
 765 S.E.2d at 103
 
 , I would find that there is a material variance between the State's proof and the indictment. Therefore, I vote to reverse the conviction for resisting a public officer by running away from him on foot.