IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-3

Filed 07 March 2023

Duplin County, Nos. 19CRS51734-35

STATE OF NORTH CAROLINA

v.

ADRON MORRIS, JR., Defendant.

Appeal by defendant from judgments entered on or about 28 May 2021 by Judge Henry L. Stevens in Superior Court, Duplin County. Heard in the Court of Appeals 9 August 2022.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Sage A. Boyd, for the State.*
>
> *Shelly Bibb DeAdder, for defendant-appellant.*

STROUD, Chief Judge.

Defendant Adron Morris, Jr. appeals from an order denying his motion to suppress eyewitness identification evidence and from two judgments for one count per judgment of (1) sale and (2) delivery of cocaine.[1] As to the motion to suppress, because there was not a substantial likelihood of irreparable misidentification, the

---

[1] As explained below, the trial court incorrectly entered judgement for two counts of sale *and* two counts of delivery of cocaine. Instead, the trial court should have entered judgment for two total counts of sale or delivery of cocaine. Because the trial court's error in the judgment related back to both the indictment and the jury's verdicts, we mention separate charges for (1) sale of cocaine and (2) delivery of cocaine throughout the "Background" section. The discussion of why the trial court erred in treating sale and delivery as separate charges occurs in the "Sentencing Issue" section.

identification did not violate due process. Because the Eyewitness Identification Reform Act ("EIRA") did not apply, the identification did not violate it either. As a result, we affirm the trial court's denial of Defendant's motion to suppress. As to Defendant's trial, because the EIRA did not apply, the trial court did not err in denying Defendant's motion *in limine* based on the EIRA. Because there was overwhelming evidence of Defendant's guilt, the trial court did not plainly err by allowing the jurors to treat illustrative evidence as substantive evidence. Finally, because the trial court erred by giving weight to both the sale and the delivery of cocaine charges when sentencing Defendant, we remand for Defendant to be resentenced on a single count of sale or delivery for each involved transaction.

## I.    Background

Because the main factual disputes in this appeal concern Defendant's motion to suppress, we start by discussing what the State's evidence tended to show at the suppression hearing. That evidence tended to show, on 12 and 13 December 2017, Detective Cody Boyette of the Duplin County Sheriff's Office had two informants, Kenyatta Polk and "Ms. Eve,"[2] conduct undercover drug buys at a trailer park in Wallace, North Carolina. On both days, the informants bought crack cocaine from someone Eve knew as "Head[.]" Polk later identified Defendant as Head at the suppression hearing.

---

[2] At various points in the transcript, Ms. Eve is also referred to as Evelyn. We refer to her as Eve throughout for consistency.

Each day the informants went to the vacant trailer around mid-day. The weather and visibility were good, and Polk had a clear, unobstructed view of Head from "[a]bout three to five feet" away during their interactions, which lasted "[p]robably a minute" or two. As the "lead" or "primary" informant, Polk recorded the interactions, with both audio and video means, using equipment supplied by Detective Boyette.

After the interactions, the informants returned to Detective Boyette with the drugs they had purchased from Head. At that time, law enforcement officers "debriefed" Polk, and she provided a written account of the interactions, identifying the person she had purchased drugs from as Head. As part of this debrief, Polk described Head as a "black male with a scruffy beard, 5'7 or 5'8, with a brush cut[,]" and weighing 150 pounds. Detective Boyette also watched the recording of the transactions shortly after recording them and created a case file for the transactions with the suspect initially listed only as Head.

About two weeks after the undercover drug buys, Detective Boyette connected the name Head to Defendant by using information from confidential informants and police databases, as well as other "police work." As part of this process, Detective Boyette looked up identifying information for Defendant and noted Defendant was listed as five feet, seven inches tall and 150 pounds, as Polk had described. Once Detective Boyette had Defendant's name, he looked up a DMV photo of Defendant and compared it to the footage of Head from the recordings of the drug buys, as well

as still photos taken from the footage, to confirm Defendant was Head. Detective Boyette did not ask Polk to identify Defendant as Head at that time.

After a delay to allow the informants to continue working without revealing their identities, the Duplin County Sheriff's Office arrested Defendant on or about 19 September 2019. Then, on or about 17 December 2019, Defendant was indicted on two counts each—one for each of the days of the controlled buys—of the following three charges: possession with intent to manufacture, sell, and/or deliver a Schedule II controlled substance, *i.e.* the cocaine ("possession"); sale of a Schedule II controlled substance ("sale"); and delivery of a Schedule II controlled substance ("delivery").

Then, on 9 October 2020, the State held a trial preparation meeting with one of the informants, Polk,[3] and Detective Boyette. While reviewing the case file at this meeting, Polk saw a DMV picture of Defendant with Defendant's name written on it. After Polk picked up the photo, the prosecutor and Detective Boyette asked her, "Is this the person you purchased from?" Polk responded, "Yes." The prosecutor and Detective Boyette did not show Polk any other pictures at the trial preparation meeting.

Partially as a result of this meeting, on 23 October 2020, Defendant's attorney filed a motion to suppress "eyewitness testimony and prevent[] certain witnesses from

---

[3] The other informant, Eve, did not testify at either the suppression hearing or Defendant's trial. Our record does not contain any information about her beyond her involvement in the initial undercover drug buys as discussed above.

rendering in-court identifications" based on the federal and state Constitutions and EIRA. Specifically, Defendant contended law enforcement never had either of the two informants who conducted the drug buys identify Defendant as Head, the person from whom they had bought the cocaine. Defendant argued allowing an identification for the first time in court "would amount to an impermissible 'show up,' in clear violation of Defendant's due process and statutory rights." As a result, Defendant asked the trial court to suppress "any eyewitness identifications, including potential in-court identifications[.]"

On 29 October 2020, the trial court held a hearing on Defendant's motion to suppress. At the hearing both Polk and Detective Boyette testified about the undercover drug buys and Polk's subsequent trial preparation meeting as discussed above. Polk also identified Defendant as Head, the person from whom she bought drugs, with "[a] hundred percent" certainty. The State further admitted into evidence: the recordings of both undercover drug buys; still photographs of Head taken from those recordings; Polk's written debriefs; and the information from police databases Detective Boyette used to identify Defendant as Head. The State finally played the relevant portions of the recordings during Polk's testimony. After hearing arguments from counsel, the trial court orally denied Defendant's motion to suppress.

The trial court subsequently entered a written order denying Defendant's motion to suppress that aligned with its oral order. First, the trial court found both Polk and Detective Boyette "to be credible." The trial court then found on both 12

and 13 December 2017 Polk bought "a controlled substance" from Head and "[d]uring the transaction it was light out, there was nothing obstructing the person known as Head's face, [and] Ms. Polk had an unobstructed view of Head's face for approximately 1 minute from a distance of 3 to 5 feet." On both days, Polk recorded the interactions, and "[a]n unobstructed view of Head's person, including his face, were clearly depicted in the recordings." The trial court also found "[i]mmediately after" the 12 December transaction, Polk described Head "as being a young black male standing approximately 5'7" and weighing approximately 150 pounds." After recounting how Polk had identified Defendant as the person from whom she bought drugs with one hundred percent certainty, the trial court made another finding about the circumstances surrounding the identification that largely summarized the prior findings. In its final two findings, the trial court determined "[t]here was not a substantial likelihood of misidentification by the witness[,]" and "[t]here was a reasonable possibility of observation sufficient to permit subsequent identification."

Based on those findings of fact, the trial court concluded "[t]he identification procedure was not so impermissibly suggestive as to create a substantial likelihood of misidentification[,]" again noting Polk "unequivocally identified . . . Defendant as the person from whom she bought controlled substances." The trial court also noted it took into account the EIRA. As a result, the trial court denied Defendant's motion to suppress.

Following the suppression hearing, Defendant's attorney filed two motions *in*

*limine* on 15 November 2020. In the first motion *in limine*, Defendant sought to exclude any testimony by Detective Boyette identifying Defendant as Head on the grounds it was impermissible lay opinion testimony because Detective Boyette only made an identification by comparing the still photos from the recordings of the transactions to pictures of Defendant in "law enforcement databases" rather than by having any personal interaction with Defendant or Head. In the second motion, Defendant asked for the court to deem admissible "evidence of the State's failure to comply with the" EIRA.

The case came for trial starting on 24 May 2021. Before the start of trial and outside the presence of the jury, the parties discussed the motions *in limine*. The parties told the court they had reached a "tentative agreement" on the motion *in limine* about Detective Boyette's identification of Defendant as Head. The trial court heard arguments on the other motion *in limine* about the EIRA. During these arguments, the State asserted, in part, the EIRA did not apply to Polk's identification. The trial court agreed with the State that the EIRA did not apply, so it did not allow Defendant's attorney to "bring[] up" that law enforcement was "required to do certain things under the" EIRA. But the trial court clarified questions about the identification, the timeframe, "and all that kind of stuff are obviously permissible."

At trial, the State's only witnesses were Polk and Detective Boyette. Polk testified about the controlled drug purchases of crack cocaine consistent with her testimony at the suppression hearing. As part of Polk's testimony, the jurors watched

her recordings of the transactions on both days, and the State introduced still photos of Head taken from the recordings. After the trial court overruled the renewed objection of Defendant's counsel, Polk identified Defendant as the person from whom she purchased drugs both days with "[a] hundred percent" certainty. Detective Boyette also testified consistently with his testimony at the suppression hearing. In addition to testimony on the topics he discussed at the suppression hearing, Detective Boyette explained to the jury how the undercover drug buys took place in an area "[a]pproximately a football field or less" from an address associated with Defendant.

Defendant did not present evidence at trial, so the case went to the jury. During jury deliberations, the jurors sent a note to the court saying, "DMV photo, still shots, all photos." Neither party objected to the jurors receiving these items, but, at the State's request, the jurors reviewed them in the courtroom.

Following the deliberations, the jury found Defendant guilty of two counts each, one for each day, of: possession; sale; and delivery. The trial court arrested judgment on both the possession charges. On or about 28 May 2021, the trial court entered judgment on both the sell and deliver charges; it sentenced Defendant to 15 to 27 months for the 12 December counts and 15 to 27 months for the 13 December counts. Defendant gave oral notice of appeal in open court.

## II. Analysis

Defendant contends the trial court erred in four ways. First, he argues "the trial court erred by denying [his] motion to suppress" the informant Polk's

"eyewitness identification because the identification procedure . . . violated his due process rights." (Capitalization altered.) Second, Defendant asserts "the identification procedure did not comply with the" EIRA, so the trial court erred in denying his motion to suppress on that ground as well and "erred by denying [his] motion *in limine* to introduce evidence that the State failed to comply with the EIRA." (Capitalization altered.) Third, Defendant contends the trial court plainly erred "by allowing the jury to examine" his DMV photo during deliberations and to "treat it as substantive evidence" because it was introduced for illustrative purposes only. (Capitalization altered.) Finally, Defendant argues "the trial court erred by entering judgment for both selling and delivering cocaine." (Capitalization altered.) We address each of the issues in turn.

## A. Eyewitness Identification and Due Process

Defendant first argues the trial court erred in denying his motion to suppress because Polk's identification "violated his due process rights." The due process inquiry in the context of eyewitness identification "asks 'whether the identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification.'" *State v. Rouse*, 284 N.C. App. 473, 480, 876 S.E.2d 107, 114 (2022) (quoting *State v. Malone*, 373 N.C. 134, 146, 833 S.E.2d 779, 787 (2019)), *disc. rev. denied,* ___ N.C. ___, 881 S.E.2d 308 (2022). That inquiry has two steps:

> first assessing "whether the identification procedures were impermissibly suggestive." [*Malone*, 373 N.C. at 146, 833 S.E.2d at 787] (citations and quotations omitted). "If this

question is answered negatively, our inquiry is at an end."
*State v. Headen*, 295 N.C. 437, 439, 245 S.E.2d 706, 708
(1978). If the answer is affirmative, courts then determine
"whether the procedures create a substantial likelihood of
irreparable misidentification." *Malone*, 373 N.C. at 146,
833 S.E.2d at 787 (citations and quotations omitted). At
this second step, "[t]he central question is whether under
the totality of the circumstances the identification was
reliable even if the confrontation procedure was
suggestive." [*State v.*] *Reaves-Smith*, 271 N.C. App. [337,]
345, 844 S.E.2d [19,] 25 [(2020)] (citing *State v. Oliver*, 302
N.C. 28, 45-46, 274 S.E.2d 183, 195 (1981))[.]

*Id.* at 480, 876 S.E.2d at 114-15 (bracket for "[t]he" in original) (brackets with citation

information added). To aid in the second step's totality of the circumstances analysis,

courts use five factors:

[(1)] the opportunity of the witness to view the accused at
the time of the crime, [(2)] the witness' degree of attention
at the time, [(3)] the accuracy of his prior description of the
accused, [(4)] the witness' level of certainty in identifying
the accused at the time of the confrontation, and [(5)] the
time between the crime and the confrontation.

*Id.* at 481-82, 876 S.E.2d at 115 (brackets in original) (quoting *Malone*, 373 N.C. at

147, 833 S.E.2d at 787).

Having reviewed that framework, we turn to Defendant's specific arguments

on the due process issue. First, Defendant challenges certain findings of fact within

the trial court's order denying his motion to suppress. Defendant then argues the

"the trial court's Findings of Fact do not support the Conclusions of Law" that "the

'identification procedure was not so impermissibly suggestive as to create a

substantial likelihood of irreparable misidentification' and that '[t]here was a

reasonable possibility of observation sufficient to permit subsequent identification[,]'" which both support the trial court's ultimate conclusion, the identification did not violate Defendant's due process rights. (First brackets in original.) After addressing the standard of review, we assess Defendant's challenges to the findings and then to the trial court's conclusion his due process rights were not violated.

### 1. *Standard of Review*

This Court recently summarized the standard of review for the denial of a motion to suppress in an eyewitness identification case:

> On appeal, "review of the denial of a motion to suppress is limited to determining whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Malone*, 373 N.C. 134, 145, 833 S.E.2d 779, 786 (2019) (quotations and citations omitted). "Unchallenged findings are deemed supported by competent evidence and are binding on appeal." *State v. Fields*, 268 N.C. App. 561, 566-67, 836 S.E.2d 886, 890 (2019) (citing *State v. Biber*, 365 N.C. 162, 167, 712 S.E.2d 874, 878 (2011)). Challenged findings "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *Malone*, 373 N.C. at 145, 833 S.E.2d at 786 (quotations and citations omitted). "However, the trial court's conclusions of law are fully reviewable on appeal." *Id.* (citation omitted); *see also Fields*, 268 N.C. App. at 567, 836 S.E.2d at 890 ("Conclusions of law are reviewed de novo.").

*Id.* at 479, 876 S.E.2d at 114.

### 2. *Challenged Findings of Fact*

Applying that standard of review, Defendant first contends findings of fact 2, 3, 4, 7, 8, and 9 "are not supported by competent evidence." (Capitalization altered.)

Defendant groups his challenges to the findings, and we review his contentions in those groups.

First, Defendant challenges findings 2, 3, and 7. Findings 2 and 3 concern the informant Polk's drug purchases:

> 2. On or about December 12, 2017, Ms. Polk bought a controlled substance from someone she referred to as "Head." During the transaction it was light out, there was nothing obstructing the person known as Head's face, Ms. Polk had an unobstructed view of Head's face for approximately 1 minute from a distance of 3 to 5 feet.

> 3. On or about December 13, 2017, Ms. Polk bought a controlled substance from someone she referred to as "Head." During the transaction it was light out, there was nothing obstructing the person known as Head's face, Ms. Polk had an unobstructed view of Head's face for approximately 1 minute from a distance of 3 to 5 feet.

Finding 7 summarizes previous findings and lists them in alignment with the five factors relevant for the second step of the due process analysis:

> 7. Although it has been nearly 3 years since the crime occurred, Polk had ample opportunity to view the perpetrator of this crime in person at a distance of 3 to 5 feet with two separate daylight observations lasting approximately 1 minute each. Polk is a professional informant and exhibited a high degree of attention as evidenced by her care in recording the perpetrator and his face. Polk's description of the perpetrator was extremely accurate as evidenced by her estimation of his height and weight matching his recorded height and weight. Polk also demonstrated a high level of certainty, stating that she was "100% certain" that Defendant was the man from whom she bought controlled substances on December 12, 2017 and December 13, 2017.

*See id.* at 481, 876 S.E.2d at 115 (listing factors).

As to each of these three findings, Defendant specifically challenges the sentences on Polk's "clear and unobstructed view of Head for approximately one minute[.]" Defendant admits Polk "testified that one to two minutes passed from the time she arrived to purchase the drugs to the time the drugs were in her hands" and the testimony "is accurate according to the videos[.]" But Defendant contends "the relevant timeframe is her direct interaction with Head[,]" which lasted only 35 seconds on 12 December and 26 seconds on 13 December, and that time period "is half of what the trial court sets forth."

As Defendant indicates, Polk testified the time between her arrival to obtaining the drugs was "[o]ne to two minutes" for each of the two days. After reviewing the videos which were shown during the suppression hearing, Defendant is correct the interactions were closer to 30 to 40 seconds each day rather than a full minute. But Polk also testified she interacted with Head for a minute on each day:

> Q. So the entirety of your interaction with Head was basically a minute on December 12, 2017 and another minute on December 13, 2017, is that right?
>
> A. Yes, sir.

Notably, that testimony came on cross-examination by Defendant's own attorney. Since Polk testified each interaction was "basically a minute," the trial court had competent evidence to support the Findings, even if the video presented conflicting evidence. *See id.* at 479, 876 S.E.2d at 114 ("Challenged findings 'are conclusive on

appeal if supported by competent evidence, even if the evidence is conflicting.'" (quoting *Malone*, 373 N.C. at 145, 833 S.E.2d at 786)). Therefore, we reject Defendant's challenge to findings 2, 3, and 7 on the ground that the timeframe of the informant Polk's interaction with Head was shorter than the trial court found.

Defendant also challenges finding 4 together with another part of finding 7. Finding 4 states:

> 4. Ms. Polk captured both the December 12 and December 13 transactions on an audio/visual recording device. An unobstructed view of Head's person, including his face, were clearly depicted in the recordings.

As to finding 4, Defendant argues "[t]he recordings in this case are not clear[,]" and the trial court erroneously stated, "Head is distinctly visible throughout the interactions." Defendant also challenges finding 7's statement Polk "exhibited a high degree of attention as evidenced by her care in recording the perpetrator and his face."

We reject Defendant's challenges to finding 4 and that part of finding 7 because the trial court had competent evidence to support those findings. As to finding 4, Defendant misstates the finding. Finding 4 never says the recording is clear or Head "is distinctly visible throughout the interactions." The trial court only found there was a clear, unobstructed view of "Head's person, including his face," in the recordings during at least one point. Reviewing the videos shown at the suppression hearing, they clearly depict the person identified as Head, including both his body and his face. Similarly, finding 7 only stated Polk ensured the recordings captured

"the perpetrator and his face[,]" and those same portions of the video show she did. As a result, the trial court had competent evidence to support findings 4 and 7.

Finally, Defendant argues findings 8 and 9 are actually conclusions of law. We agree. Findings 8 and 9 state:

> 8. There was not a substantial likelihood of misidentification by the witness.
>
> 9. There was a reasonable possibility of observation sufficient to permit subsequent identification.

Both findings relate to the second step of the due process analysis discussed above. Finding 8's language on the lack of "a substantial likelihood of misidentification" mirrors the language for the second part of the analysis. *See id.* at 480, 876 S.E.2d at 114 (phrasing the second step as "a substantial likelihood of irreparable misidentification" (citations and quotation marks omitted)). And finding 9's focus on a previous "observation sufficient to permit subsequent identification" resembles the first factor of the five factors used when conducting the second step inquiry because the first factor focuses on "the opportunity of the witness to view the accused at the time of the crime." *Id.* at 481, 876 S.E.2d at 115. Because these findings are actually conclusions of law, we will treat them as conclusions. *See State v. Hopper*, 205 N.C. App. 175, 179, 695 S.E.2d 801, 805 (2010) ("A trial court's mislabeling a determination . . . is inconsequential as the appellate court may simply re-classify the determination and apply the appropriate standard of review." (citations and quotation marks omitted)). As a result, we will review the findings with Defendant's

argument the trial court erred in concluding the identification did not violate his due process rights, to which we now turn.

### 3. *Conclusions of Law on Due Process*

Defendant argues the trial court erred in concluding "the identification procedure was not so impermissibly suggestive as to create a substantial likelihood of irreparable misidentification" and that there "was a reasonable possibility of observation sufficient to permit subsequent identification" and therefore erred in determining no due process violation occurred. Specifically, Defendant, aligning with the two prongs of the due process test, *see Rouse*, 284 N.C. App. at 480, 876 S.E.2d at 114-15, argues "the identification procedure in this case was impermissibly suggestive" and "there was a substantial likelihood of misidentification." (Capitalization altered.) We review the trial court's conclusion that the identification procedure did not violate due process *de novo*. *See id.* at 479, 876 S.E.2d at 114.

The first issue is "whether the identification procedures were impermissibly suggestive." *Id.* at 480, 876 S.E.2d at 114. The trial court did not make any findings on the pre-trial identification procedure in question in this case, but Polk testified about the procedure during the suppression hearing. Specifically, during trial preparation with the prosecutor and Detective Boyette, Polk reviewed "the file" and saw a DMV picture of Defendant with Defendant's name on it. After Polk picked up the photo, "they asked [her] the - 'Is this the person you purchased from[,]'" and she said yes. That photo was the only picture Polk saw or was asked about; she had not

been asked to identify any photos prior to the trial preparation meeting and was only asked about that one photo at the meeting.

"Our courts have widely condemned the practice of showing suspects singly to persons for the purpose of identification." *State v. Yancey*, 291 N.C. 656, 661, 231 S.E.2d 637, 640 (1977) (citing, *inter alia, Stovall v. Denno*, 388 U.S. 293, 302, 18 L.Ed.2d 1199, 1206 (1967), *abrogated on other grounds by U.S. v. Johnson*, 457 U.S. 537, 73 L.Ed.2d 202 (1982)). Furthermore, the Supreme Court of the United States "has held that single-suspect identification procedures 'clearly convey the suggestion to the witness that the one presented is believed guilty by the police.'" *Malone*, 373 N.C. at 148, 833 S.E.2d at 788 (brackets omitted) (quoting *U.S. v. Wade*, 388 U.S. 218, 234, 18 L.Ed.2d 1149, 1161 (1967)). For example, in *State v. Jones*, this Court held "[t]he showing of only one picture some seven months after the incident occurred, after the witness had been notified that he would be receiving a photograph of the defendant and with the defendant's name written on the back, was impermissibly suggestive." *State v. Jones*, 98 N.C. App. 342, 347, 391 S.E.2d 52, 56 (1990).

Further, in *Malone*, our Supreme Court found a similar trial preparation identification scenario to be impermissibly suggestive. *See Malone*, 373 N.C. at 148, 833 S.E.2d at 788. There, the prosecutor showed two witnesses a video of one defendant's interview and recent photographs of both defendants. *See id.* The *Malone* Court determined the prosecutor "did more than simply convey a suggestion" and "effectively told" the witnesses "they were viewing pictures of the men police

believed were responsible" by showing them the photos "in a meeting two weeks before trial." *Id.* The *Malone* Court also rejected the arguments that the trial preparation setting or the fact that one of the witnesses asked to see the video of the defendant's interview changed the first step of the due process analysis. *See id.* at 148-49, 833 S.E.2d at 788-79. The *Malone* Court held the situation led "inescapably to the legal conclusion that the procedures employed . . . were impermissibly suggestive." *Id.* at 149, 833 S.E.2d at 789.

Here, the identification situation resembles both *Jones* and *Malone*, so it was also impermissibly suggestive. Similar to *Jones*, Polk saw only one photo years after the incident, and the photo had Defendant's name written on it. *See Jones*, 98 N.C. App. at 347, 391 S.E.2d at 56. And similar to *Malone*, the district attorney "effectively told" Polk she was looking at a picture of the person police believed bought the drugs because Defendant's name was on the picture and the picture was included in the police file during a meeting to prepare for Defendant's trial. *See Malone*, 373 N.C. at 148-49, 833 S.E.2d at 788-79. Moreover, it does not make a difference that here Polk picked up the photo out of the file before the prosecutor and Detective Boyette asked if that was the person from whom she purchased the drugs. The *Malone* Court rejected a similar argument when in that case the witness asked to watch one of the videos of a defendant. *See id.* As a result, we determine Polk seeing the photo of Defendant in the file during the trial preparation meeting was impermissibly suggestive, thereby satisfying the first step of the due process inquiry.

The State argues Polk's "out-of-court identification was not impermissibly suggestive" because she: had previously interacted with the person she had bought drugs from "during daylight with clear visibility[;]" was able to record those interactions; and described him afterwards. But those arguments all relate to the factors used to assess the substantial likelihood of irreparable misidentification rather than to the impermissibly suggestive nature of the identification. *See Rouse*, 284 N.C. App. at 481, 876 S.E.2d at 115. For example, the State's argument Polk had previously interacted with the person she bought drugs from "during daylight with clear visibility" relates to the first factor "the opportunity of the witness to view the accused at the time of the crime[.]" *Id.* Therefore, the State's arguments do not change our determination that the identification was impermissibly suggestive; they are only relevant to the second step.

Turning to that second step, we must determine "whether the procedures create[d] a substantial likelihood of irreparable misidentification." *See id.* at 480, 876 S.E.2d at 114. In order to assess that question, we use five factors:

> [(1)] the opportunity of the witness to view the accused at the time of the crime, [(2)] the witness' degree of attention at the time, [(3)] the accuracy of his prior description of the accused, [(4)] the witness' level of certainty in identifying the accused at the time of the confrontation, and [(5)] the time between the crime and the confrontation.

*Id.* at 481, 876 S.E.2d at 115 (brackets in original). "Reviewing courts do not need to find all five factors weigh against a substantial likelihood of irreparable

- 19 -

misidentification to admit the evidence over due process concerns." *Id.* at 482, 876 S.E.2d at 115. The factors must ultimately be weighed against "the corrupting effect of the suggestive procedure itself." *State v. Pigott*, 320 N.C. 96, 100, 357 S.E.2d 631, 634 (1987) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 53 L.Ed.2d 140, 154 (1977)). We address each factor in turn.

As to the first factor, the trial court found "[d]uring the transaction it was light out, there was nothing obstructing the person known as Head's face," and Polk "had an obstructed view of Head's face for approximately 1 minute from a distance of 3 to 5 feet" both days she bought drugs from Head. Many of the facts for this factor resemble the situation in *Malone* where the first factor counted against a due process violation when one of the witnesses saw a shooter for 75 to 90 seconds from four feet away. *See Malone*, 373 N.C. at 148-50, 833 S.E.2d at 788-79 (stating in terms of supporting an independent origin after saying that independent origin inquiry is "merely the second part of the due process inquiry"). Here, the time frame of approximately two minutes total and distance of 3 to 5 feet is nearly identical. The trial court's additional findings—the transaction occurred when it "was light out" and nothing was obstructing Head's face—serve only to further strengthen Polk's opportunity to view the accused. Thus, this factor counts against a due process violation.

On the second factor, "the witness's degree of attention[,]" *Rouse*, 284 N.C. App. at 481, 876 S.E.2d at 115, the trial court relevantly found Polk is a "professional" who

took "care in recording the perpetrator and his face" given the recordings "clearly depicted" an "unobstructed view of Head's person, including his face[.]" In *State v. Smith*, this Court noted a police officer who participated in an undercover drug purchase testified she had "trained to maintain a high degree of attention when observing suspects," in part through an "informant training and control," and because she knew she would be required to later identify the suspect. *State v. Smith*, 134 N.C. App. 123, 124, 128, 516 S.E.2d 902, 904, 906 (1999). Here, Polk's "professional" status and the care in the recording likewise indicate she knew she would need to pay attention to later be able to identify the person from whom she brought the drugs. Therefore, this factor also counts against finding a due process violation.

Turning to the third factor, we look at the accuracy of Polk's prior description of the accused. *See Rouse*, 284 N.C. App. at 481, 876 S.E.2d at 115. The trial court found, following the first transaction on 12 December 2017, Polk described Head as being a "young black male standing approximately 5'7" and weighing approximately 150 pounds." The trial court also found this description "match[ed]" Defendant's "recorded height and weight."

That match is important, but in the past our courts have found a more detailed description still supported a due process violation. For example, in *State v. Headen*, our Supreme Court found a due process violation in part because the witness "could only give a general description" including the accused's race, height, age range, build, and hair. *State v. Headen*, 295 N.C. 437, 442-43, 245 S.E.2d 706, 710 (1978). This

"general description" described the perpetrator as a white man who was 5' 9" tall, "slender or medium build[,]" and who had "dark colored" hair. *Id.* Here, Polk described Head's race, height, age range, and approximated his weight, but the trial court's binding finding, *see Rouse*, 284 N.C. App. at 479, 876 S.E.2d at 114 (indicating findings supported by competent evidence are binding on appeal), does not indicate Polk described his hair. Polk's description also had a similar level of generality to the one in *Headen* in both race and height. *See Headen*, 295 N.C. at 442-43, 245 S.E.2d at 710. While Polk gave an approximate weight in comparison to just the witness's description of build in *Headen, see id.*, the lack of description of Head's hair helps offset this greater level of detail. In total, Polk's description here was the same or less informative than the description in *Headen* that supported finding a due process violation. *See id.* This factor slightly favors finding a due process violation.

For the fourth factor, we examine the witness's "level of certainty" in the identification "at the time of the confrontation[.]" *Rouse*, 284 N.C. App. at 481, 876 S.E.2d at 115. The time of the confrontation means the time of the "impermissibly suggestive events[.]" *See Malone*, 373 N.C. at 151, 833 S.E.2d at 790 (indicating time of confrontation was 29 February 2016 and then when discussing another factor saying that was the date of "the impermissibly suggestive events"). The trial court here only made a finding Polk identified Defendant as the person from whom she purchased drugs with one hundred percent certainty during her testimony. The trial court did not make any finding on Polk's certainty at the time of the confrontation—

*i.e.* when she was shown the photo of Defendant during the pre-trial meeting—although Polk testified that when she was asked whether that photo depicted the person from whom she purchased drugs, she said "Yes." Since Polk's testimony about her identification at the time of the confrontation did not demonstrate hesitancy, this factor slightly counts against a due process violation.

Finally, for the fifth factor, we consider "the time between the crime and the confrontation." *Rouse*, 284 N.C. App. at 481, 876 S.E.2d at 115. The trial court noted in its findings that it had been "nearly 3 years since the crime occurred[.]" This gap in time between the crime and confrontation resembles *Malone* where our Supreme Court found the factor favored finding a due process violation when the confrontation occurred three and a half years after the crime for one of the witnesses. *See Malone*, 373 N.C. at 151, 833 S.E.2d at 790. Thus, this factor also favors finding a due process violation.

Weighing all those factors as part of the totality of the circumstances against the corrupting influence of the identification procedure itself, the procedure did not "create a substantial likelihood of irreparable misidentification." *Rouse*, 284 N.C. App. at 480, 876 S.E.2d at 114 (citation and quotation marks omitted). Polk had an excellent chance to observe Head during the transactions, and she gave an accurate, albeit limited, description of Head that matched Defendant. Her professional background and the corresponding degree of attention she paid also mitigates the impact of the gap in time between the confrontation and identification because Polk

knew she could be asked to identify the person from whom she bought drugs later and would therefore need to remember him. *See Smith*, 134 N.C. App. at 128, 516 S.E.2d at 906 (finding no due process violation in part because the police officer witness was a professional who "was aware that part of her responsibility . . . would require that she later identify [the] defendant"). While this fact does not fit cleanly within any one of the five factors, the length in time between the confrontation and identification is also mitigated by the fact Polk reviewed the videos she recorded of the drug purchases shortly before making the identification. Thus, the confrontation was fresher in Polk's mind than the three year gap would otherwise indicate. Finally, Polk did not express hesitancy in her identification. Because there was not a substantial likelihood of irreparable misidentification, the identification did not violate due process. After our *de novo* review, we hold the trial court did not err in reaching that conclusion.

### B. EIRA Issues

Beyond his due process argument in relation to Polk's eyewitness identification, Defendant contends the identification also violated the EIRA. Specifically, Defendant argues the "procedure used in this case was either an improper photographic lineup[,]" an "improper show-up[,]" or "some variation that is not permitted by statute." Defendant argues the asserted EIRA violation caused two separate errors in the trial court. First, he contends the eyewitness identification "should have been suppressed" because of the EIRA violation. Second, he argues the

trial court erred by denying his "motion *in limine* to introduce evidence that the State failed to comply with the EIRA." (Capitalization altered.) The State responds Polk's "observation of the DMV photo in the case file was not part of a procedure outlined in the EIRA[,]" so the trial court "appropriate[ly]" decided "the EIRA was not applicable under these circumstances[.]"

As an initial matter, we must decide whether the EIRA applies to Polk's identification in this case. Only if the EIRA applies do we need to reach Defendant's arguments about a violation of the EIRA and the trial court's alleged errors in relation to any such violation.

### 1. *Standard of Review*

The applicability of the EIRA presents an issue of statutory interpretation. "We review questions of statutory interpretation *de novo*." *State v. Macon*, 236 N.C. App. 182, 185, 762 S.E.2d 378, 380 (2014).

### 2. *Applicability of the EIRA*

"As our Supreme Court has emphasized, when construing a statute, 'our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished.'" *State v. Rawls*, 207 N.C. App. 415, 419, 700 S.E.2d 112, 115 (2010) (quoting *Electric Supply Co. of Durham, Inc. v. Swain Elec. Co., Inc.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). The first method of statutory construction is to "ascertain[]" the legislative intent "from the plain words of the statute." *Id.* (quoting *Electric Supply Co.*, 328 N.C. at 656, 403 S.E.2d at 294). Further, when a statute

"contains a definition of a word used therein, that definition controls[.]" *Id.* (quoting, *inter alia*, *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 203 (1974)). When looking at the language of the statute, "words and phrases . . . may not be interpreted out of context, but individual expressions must be construed as a part of the composite whole[.]" *Id.* at 419, 700 S.E.2d at 115-16 (brackets omitted) (quoting, *inter alia*, *In re Hardy*, 294 N.C. 90, 95-96, 240 S.E.2d 367, 371-72 (1978)). Finally, as relevant here, "the legislature is 'presumed to have acted with full knowledge of prior and existing law and its construction by the courts.'" *See id.* at 421, 700 S.E.2d at 117 (brackets omitted) (quoting *State v. Anthony*, 351 N.C. 611, 618, 528 S.E.2d 321, 324 (2000)).

Turning to the statute at issue here, the main provisions of the EIRA are codified in N.C. Gen. Stat. § 15A-284.52. *See* N.C. Gen. Stat. § 15A-284.52 (2017). The EIRA includes required procedures for both lineups (sub-sections (b) and (c)) and show-ups (sub-section (c1)). *Id.* Both the required procedures sub-sections and the definition sub-section identify two types of lineups, a "[l]ive lineup" and a "[p]hoto lineup." *See id.* (a)(6)-(7) (defining the two types of lineups); *see, e.g., id.* (b)(4) (setting requirements for "[i]n a photo lineup") and (b)(8) (setting requirements for "[i]n a live lineup"). By contrast, the same relevant sub-sections for show-ups do not explicitly differentiate between live and photo show-ups. The definition of "[s]how-up" only discusses the use of a live person: "A procedure in which an eyewitness is presented with a single live suspect for the purpose of determining whether the eyewitness is

able to identify the perpetrator of a crime." *Id.* (a)(8). And one of the requirements for a show-up dictates the procedure "shall only be performed using a live suspect and shall not be conducted with a photograph." *Id.* (c1)(2).

Both of these sub-sections on show-ups indicate a show-up can only permissibly include a live person. *See id.* (a)(8), (c1)(2). Thus, if the identification in this case were a show-up under the EIRA, Defendant has shown an EIRA violation, and we would have to discuss the potential remedies for which he argues. But, we hold the identification procedure in his case was not a show-up covered under the EIRA.

The first issue we must address is how to classify the identification here because that classification determines which portions of the EIRA we must interpret. Defendant argues the procedure was either "an improper photographic lineup[,]" an "improper show-up[,]" or "some variation that is not permitted by statute." As discussed above, the identification here involved Polk seeing a single photograph of Defendant and being asked if he was the person from whom she bought the drugs. In the past, this Court has described "[t]he use of a single photograph . . . to make an identification" as what "might be called a photographic showup[.]" *Macon*, 236 N.C. App. at 189-90, 762 S.E.2d at 383. In that case, this Court held the EIRA did not cover single-photograph identifications "because they are not lineups" and the version of the EIRA in effect at the time did not ban show-ups. *Id.* The relevant version of the EIRA here creates requirements for at least some types of show-ups, *see* N.C. Gen. Stat. § 15A-284.52(c1) (2017), following an amendment by the General Assembly. *See*

2015 North Carolina Laws S.L. 2015-212, §§ 1, 3 (11 Aug. 2015) (adding show-up provisions to § 15A-284.52(c1) in amendment effective 1 Dec. 2015). As a result, the portion of *Macon*'s reasoning that a photographic show-up is not covered by the EIRA because the EIRA does not ban show-ups has been abrogated by the statutory change. But we still follow *Macon*'s rejection of the idea a single-photo identification can be classified as a lineup. *See Macon*, 236 N.C. App. at 189, 762 S.E.2d at 383. Therefore, we reject Defendant's argument the identification here could be classified as a lineup.

Having concluded the identification here was not a lineup, the only remaining identification type in the EIRA that could cover the identification is a show-up. Thus, we need to determine if the identification procedure here was a show-up within the meaning of the EIRA.

The first method of statutory interpretation, the plain meaning of the statute, does not fully answer the question here. *See Rawls*, 207 N.C. App. at 419, 700 S.E.2d at 115 (indicating the first approach in statutory interpretation is to focus on the plain meaning of the "words of the statute" (citation and quotation marks omitted)). Using the definition of "show-up," which we are bound by, *see id.* (explaining statutory definition "controls" (citation and quotation marks omitted)), an identification using a single photograph, as happened here, would never be covered by the EIRA because the statute only defines a "show-up" as "[a] procedure in which an eyewitness is presented with a single *live* suspect[.]" N.C. Gen. Stat. § 15A-284.52(a)(8) (emphasis added). But reading that definition literally to decide the EIRA does not cover so-

called photographic show-ups does not make sense in the context of the statute, which we are required to take into account when interpreting a statute. *See Rawls*, 207 N.C. App. at 419, 700 S.E.2d at 115-16. Specifically, sub-section (c1)'s requirements for show-ups include a ban on photographic show-ups by specifically stating a show-up "shall not be conducted with a photograph." N.C. Gen. Stat. § 15A-284.52(c1)(2). Thus, the General Assembly contemplated a photographic show-up and rejected it as a permissible procedure.

Still, other aspects of a show-up make clear the identification here is not a banned photographic show-up under the EIRA. First, looking at other show-up requirements, the procedure can:

> only be conducted when a suspect matching the description of the perpetrator is located in close proximity in time and place to the crime, or there is reasonable belief that the perpetrator has changed his or her appearance in close time to the crime, and only if there are circumstances that require the immediate display of a suspect to an eyewitness.

*Id.* (c1)(1). This requirement contemplates a show-up taking place only in close proximity to the crime when trying to determine if a suspect is a perpetrator. *See id.* That interpretation aligns the EIRA's statutory requirements for a show-up with our courts' longstanding view on the positive aspects of show-ups:

> A show-up " 'is a much less restrictive means of determining, at the earliest stages of the investigation process, whether a suspect is indeed the perpetrator of a crime,' allowing an innocent person to be 'released with little delay and with minimal involvement with the

criminal justice system.' "

*See Rouse*, 284 N.C. App. at 479, 876 S.E.2d at 114 (quoting *Rawls*, 207 N.C. App. at 422, 700 S.E.2d at 117 (in turn quoting *In re Stallings*, 318 N.C. 565, 570, 350 S.E.2d 327, 329 (1986))). And we presume the General Assembly is fully aware of prior and existing law like this description of show-ups. *See Rawls*, 207 N.C. App. at 421, 700 S.E.2d at 117.

In contrast to our longstanding description of show-ups, the procedure here was not conducted in close proximity to the crime and, critically, it was not conducted to try to determine if a suspect was the perpetrator. The identification here took place during a meeting to prepare for Defendant's "potential trial[.]" As a result, the State, both the police and the prosecution, had already concluded Defendant was the perpetrator. The identification acted to bolster their evidence in support of that conclusion since they would need to convince a jury of the same. Since the identification here did not seek the same purpose as a show-up, it was not a show-up under the EIRA.

Thus, at the end of our statutory construction, we conclude the identification does not fall under the EIRA or any of its categories, either the permissible or impermissible ones. Since the EIRA does not apply to the identification at hand, the trial court did not err in denying Defendant's motion to suppress or his motion *in limine* on the grounds of an EIRA violation.

Defendant's arguments to the contrary do not change our conclusion. First,

Defendant argues, based on this Court's opinion in *State v. Malone*, 256 N.C. App. 275, 807 S.E.2d 639 (2017), "*all eyewitness identification procedures* should comply with the requirements of the EIRA." (Quoting *Malone*, 256 N.C. App. at 294, 807 S.E.2d at 652 (emphasis added by Defendant)). But as Defendant states, our Supreme Court reversed in part this Court's opinion, clarified this Court's statement all eyewitness identifications were subject to EIRA was dicta, and declined to address the EIRA further. *See Malone*, 373 N.C. at 153, 833 S.E.2d at 791. Further, this Court has also held since the amendment to the EIRA adding show-ups that not all out-of-court identifications are lineups or show-ups subject to the EIRA. *See State v. Crumitie*, 266 N.C. App. 373, 377, 831 S.E.2d 592, 595 (2019). For example, in *Crumitie*, this Court held "the inadvertent out-of-court identification of [the] defendant, based on a single DMV photograph accessed by an investigating officer" after receiving the name from another witness "for the purposes of issuing a BOLO" was "neither a lineup or show-up under the EIRA, and thus not subject to those statutory procedures." *Id.* at 377-78, 831 S.E.2d at 595. There, as here, the purpose was not to confirm a suspect was the perpetrator, so the EIRA and its provisions on show-ups did not apply. *See id.*

Defendant also asserts the failure to apply the EIRA here "would create a dangerous precedent where law enforcement can wholesale violate the EIRA and then claim that it does not apply because they were not attempting to follow one of the three procedures" covered by the EIRA. But our holding is limited to this case

and this situation where the State already had identified, charged, and were preparing to try Defendant and where the identification only happened in the course of preparation for that trial. We do not address a situation where the police present a single photograph to a witness shortly after the crime and ask if that was the person who committed the crime or any other scenario.

Beyond the limited nature of our holding, other means also exist to prevent the dire consequences of which Defendant warns. First, due process protections exist on top of the EIRA's statutory protections. *See Macon*, 236 N.C. App. at 190, 762 S.E.2d at 383 ("Even if the EIRA does not apply, the normal due process rules still do."). Second, the General Assembly can of course amend the EIRA to add additional protections if its goals are not met within the current statute as interpreted. The General Assembly has already undertaken that course of action with the EIRA when it added show-ups to the statute after this Court ruled in *Rawls* the EIRA did not apply to show-ups. *See Rawls*, 207 N.C. App. at 423, 700 S.E.2d at 118; 2015 North Carolina Laws S.L. 2015-212 (11 Aug. 2015).

After our *de novo* review, the EIRA does not apply to the identification in this case. As a result, the trial court correctly denied Defendant's motion to suppress and motion *in limine* to the extent they were based on the EIRA.

## C. Plain Error by Treating Illustrative Evidence as Substantive Evidence

In his third contention on appeal, Defendant argues "the trial court committed plain error by allowing the jury to examine the DMV photograph" of him "and treat

it as substantive evidence" because it "was introduced for illustrative purposes only[.]" (Capitalization altered.) Specifically, Defendant contends the jury compared his DMV photograph to still shots of Head from the drug purchases without the trial court giving a "qualifying instruction[.]" He also asserts this error caused prejudice because "the lack of clarity in the videos and the still shots" made it "unlikely that the jury was able to make an identification."

### 1. *Standard of Review*

The plain error standard applies to "unpreserved instructional or evidentiary error." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

> In the definitive case on plain error, our Supreme Court explained:
>
>> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Thomas*, 281 N.C. App. 159, 181, 867 S.E.2d 377, 394 (2021) (brackets in original) (quoting *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334), *disc. rev. denied*, ___ N.C. ___, 878 S.E.2d 808 (2022).

### 2. *Analysis*

Even assuming the trial court erred, the error does not rise to the level of plain error because Defendant has failed to establish a "probable impact on the jury's finding" Defendant "was guilty." *Id.* The jury had "overwhelming" evidence of Defendant's guilt, particularly on the central issue in the case: whether Defendant was Head, the person from whom Polk and the other informant bought drugs. *See Lawrence*, 356 N.C. at 519, 723 S.E.2d at 335 ("In light of the overwhelming and uncontroverted evidence, [the] defendant cannot show that, absent the error, the jury probably would have returned a different verdict."). First, Polk identified Defendant as the person who sold her drugs with "[a] hundred percent" certainty. Polk also read her description of Head from her 12 December debrief for the jury, describing him, in part, as "5'7" and "150 pounds," and Detective Boyette testified the height of Defendant matched. Detective Boyette also testified he matched the name Head to Defendant and explained that the drug buys took place in an area "[a]pproximately a football field or less" from an address associated with Defendant. Finally, the jury watched the recordings of the drug buys, and the State introduced still photos of Head taken from the recordings.

Thus, taking away the DMV photo as a point of comparison, the jury still had many bases to determine Defendant and Head were the same person. The recording and still photos are particularly pertinent. Even if the jury could not compare the recording and still photos to the DMV photo, they could still compare those depictions of Head to Defendant as he appeared before them in court. Because of this

overwhelming evidence, Defendant "cannot show that, absent the error, the jury probably would have returned a different verdict." *Id.* Therefore, he cannot demonstrate plain error even assuming an error. *See Thomas*, 281 N.C. App. at 181, 867 S.E.2d at 394 (requiring Defendant to show a "probable impact" on the jury's decision Defendant was guilty for an error to constitute plain error).

**D. Sentencing Issue**

Finally, Defendant argues "the trial court erred by entering judgment for both selling and delivering cocaine." (Capitalization altered.) He contends sentencing him for "both sale and delivery of a controlled substance" is not allowable based on *State v. Moore*, 327 N.C. 378, 395 S.E.2d 124 (1990). As a result, he "asks this Court to vacate the judgment and remand for reentry of judgment and resentencing."

### 1. *Standard of Review*

"We review alleged sentencing errors for whether the sentence is supported by evidence introduced at the trial and sentencing hearing." *State v. Fleig*, 232 N.C. App. 647, 650, 754 S.E.2d 461, 463 (2014) (citations, quotation marks, and brackets omitted).

### 2. *Analysis*

Defendant is correct. While a defendant can be tried for both the sale and delivery of a controlled substance, he cannot be sentenced for "both the sale *and* the delivery of a controlled substance arising from a single transfer." *See Moore*, 327 N.C. at 382-83, 395 S.E.2d at 127-28 (emphasis in original) (stating in terms of conviction

- 35 -

before remanding for resentencing when the convictions for both were consolidated into a single judgment).  The *Moore* Court based that ruling on its determination North Carolina General Statute § 90-95(a)(1) makes selling or delivering a controlled substance a single criminal offense.  *See id.* at 382, 395 S.E.2d at 127.  Here, the trial court violated this rule because it sentenced Defendant for both the sale *and* the delivery of a controlled substance in two consolidated judgments, one for each day.  The trial court erred in entering convictions for both sale and delivery in the consolidated judgments because each day there was only one transfer.

"When the trial court consolidates multiple convictions into a single judgment but one of the convictions was entered in error, the proper remedy is to remand for resentencing when the appellate courts 'are unable to determine what weight, if any, the trial court gave each of the separate convictions . . . in calculating the sentences imposed upon the defendant.'"  *State v. Hardy*, 242 N.C. App. 146, 160, 774 S.E.2d 410, 420 (2015) (ellipses in original) (quoting *Moore*, 327 N.C. at 383, 395 S.E.2d at 127-28).  For example in *Moore*, our Supreme Court remanded because it could not determine "what weight, if any, the trial court gave each of the separate convictions for sale and for delivery in calculating the sentences imposed upon the defendant" given they were consolidated for judgment.  *Moore*, 327 N.C. at 383, 395 S.E.2d at 127-28.

The only exception to that general rule is where the defendant "has already received the lowest possible sentence" because then it is clear the trial court did not

improperly count the second conviction. *See State v. Cromartie*, 257 N.C. App. 790, 797, 810 S.E.2d 766, 772 (2018) (explaining the reason for "typically" remanding is "the premise that multiple offense[s] probably influenced the defendant's sentence"). In *Cromartie*, for example, the defendant received "the lowest possible sentence that he could have received in the mitigated range." *Id.*

Here, the general rule requiring remand applies. The judgments themselves indicate the trial court sentenced Defendant in the presumptive range, rather than in the lowest possible part of the mitigated range as in *Cromartie*. *See id.* As a result, we cannot determine "what weight, if any, the trial court gave each of the separate convictions for sale and for delivery in calculating the sentences imposed upon" Defendant, and "[t]his case must thus be remanded for resentencing." *Moore*, 327 N.C. at 383, 395 S.E.2d at 127-28.

The State argues "any error by the trial court entering judgment for sale and delivery of cocaine was harmless error as no prejudice arose from any such error." (Capitalization altered.) Specifically, the State contends "it is clear in the record that the weight in sentencing was focused on the sale" because of statements the trial court made at sentencing. The State also asserts "the existence of the consolidated judgment will not prejudice Defendant in any future prior record level calculation."

We reject the State's harmless error argument. First, this is not a case where Defendant was given the lowest possible sentence. Second, the State cites no binding authority in support of this argument. The only case it cites is an unpublished case,

*State v. Moore*, No. COA19-301, 269 N.C. App. 386 (2020) (unpublished). In that case, this Court found no prejudice based on separate convictions for sale or delivery because the trial court "arrested judgment on the delivery convictions" and sentenced based on sale alone. *Id.*, slip op. at 7-8. Here, the trial court did not arrest judgment on either the sale or delivery conviction but rather sentenced on both. Finally, and most importantly, the trial court specifically said it was sentencing Defendant based on both the sale and the delivery for each of the two cases. At one point, the trial court explicitly said: "I'm going to sentence him on the sell of cocaine, which is a Class G [felony], and the delivery of cocaine."

Thus, the trial court apparently gave some weight to both the sale and the delivery, which was an error that requires remand. *See Moore*, 327 N.C. at 383, 395 S.E.2d at 127-28. We therefore remand for Defendant to be resentenced based on a conviction of a "single count for the 'sale or delivery of a controlled substance'" for each transaction. *Id.* at 383, 395 S.E.2d at 128.

## III. Conclusion

We affirm and find no error except as to the sentencing issue for which we remand. Specifically, we affirm the trial court's denial of Defendant's motion to suppress because, given there was not a substantial likelihood of irreparable misidentification, Polk's identification of Defendant as Head did not violate due process. Further, because the EIRA did not apply to that identification, the trial court did not need to take the Act into account when ruling on the motion to suppress. The

EIRA's lack of applicability also indicates the trial court did not err in denying Defendant's motion *in limine*. Because the trial court next did not plainly err in allowing the jurors to treat the DMV photo, admitted for illustrative purposes, as substantive evidence given the other overwhelming evidence of Defendant's guilt, the trial court did not err in relation to Defendant's conviction. But the trial court erred in sentencing Defendant on both the sale and delivery counts for each transaction because sale or delivery is a single criminal offense. As a result of that error, we remand for Defendant to be resentenced on a single count of sale or delivery for each transaction.

AFFIRMED IN PART, NO ERROR IN PART, AND REMANDED FOR RESENTENCING.

Judges ARROWOOD and COLLINS concur.